**Victoria L. TRENT, a/k/a Victoria L. Winebarger, Plaintiff–Appellant,**

v.

**VALLEY ELECTRIC ASSOCIATION, INC., Defendant–Appellee.**

**No. 98–16228.**

United States Court of Appeals, Ninth Circuit.

Submitted May 10, 1999.*

Decided Nov. 9, 1999.

Ian Christopherson, Christopherson Law Offices, Las Vegas, Nevada, for the plaintiff-appellant.

Melvin D. Close and Patrick A. Rose, Jones Vargas, Las Vegas, Nevada, for the defendant-appellee.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Before: WOOD, JR.,** KOZINSKI, and RYMER, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge:

Victoria Trent appeals the district court's judgment in favor of her former employer, Valley Electric Association ("VEA"), entered after a bench trial of Trent's action alleging retaliatory discharge under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–3(a). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Trent was employed by VEA, a rural public utility company, from February 9, 1988 to September 19, 1988, to read residential electric meters as an in-house reader. Since 1985, VEA had orally contracted with Jack Winebarger ("Winebarger") as an independent contractor to read 3500 meters in one of its more remote districts. When Trent was hired, both Ross Dohlen, general manager of VEA, and Richard Burasco, office manager, were aware that Trent and Winebarger had lived together since the 1980s. During a meeting with Burasco prior to Trent's hire, Winebarger and Trent specifically asked whether their personal relationship would be a problem. According to both Burasco and Dohlen, Trent's live-in relationship would not cause any increased risk to VEA's meter reading function. In fact, she was hired in part because she already knew the location of many of the meters, having read them while working for Winebarger as one of his contract employees. Trent was the first woman ever hired by VEA for a position other than a clerical employee.

During her seven months on the job, Trent received good employment evalua-

tions. At her final evaluation in late July/early August, Trent was rated as satisfactory or excellent with her overall rating approaching exceptional. Dohlen reviewed this evaluation and did not modify it or note any concerns about the cohabitation issue.

On July 20, 1988, Trent attended a mandatory safety meeting. On August 19, she complained to Burasco, her immediate supervisor, about improper conduct and inappropriate sexual remarks made at the July 20 meeting by the lecturer. Burasco asked her to put her account of the incident and her complaint in writing to be sent to Dohlen. Trent did so and discussed the matter with Dohlen the next day. Dohlen also interviewed at least one other employee who attended the safety meeting. On August 31, Dohlen wrote to the service company that conducted the safety meeting complaining about the lecturer's offensive comments.

On September 7, 1988, VEA signed its first written contract with Winebarger. The contract contained no clause addressing the issue of Winebarger's and Trent's cohabitation nor any possible conflict or risk arising from that situation. However, Dohlen testified that sometime in the latter part of August or early part of September, he began to be concerned that both of VEA's meter readers resided in the same household. He testified that he worried that having both the inside and outside readers residing in the same house frustrated the purpose of having an in-house reader; that if Winebarger stopped reading meters for some reason, Trent might also stop, or that both might be injured in an automobile accident while together. However, Dohlen did not identify any specific event which caused him to become concerned. He testified that he considered the matter for several weeks, and finally came to a decision that the situation

** Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

had to be corrected, and that it must be corrected by terminating Trent.

Dohlen instructed Burasco to terminate Trent. Burasco disagreed with the decision and argued with Dohlen against the termination. Burasco testified that he did not want to lose Trent because she was a good employee. Dohlen refused to change his mind. Therefore, on September 19, 1988, after the meters were read for that month's billing cycle, Trent resigned after being told by Burasco that she had to resign or she would be terminated. She then retracted her resignation and was immediately terminated. On September 30, Trent attended a meeting of VEA's Board of Directors and sought reinstatement. In spite of twenty consumers who protested her termination and hearing that she was a model employee, the Board did not reinstate her.

In 1993, the district court initially granted summary judgment in favor of VEA. *Trent v. Valley Elec. Ass'n (Trent I)*, 41 F.3d 524 (9th Cir.1994), reversed and remanded the case, holding that Trent had engaged in a "protected activity," therefore meeting the first requirement of a prima facie case of retaliatory discharge. *Id.* at 527. After a bench trial, the district court granted VEA's motion for judgment on partial findings after Trent presented her case-in-chief. In a memorandum disposition, a second panel from the Ninth Circuit determined that the district court erred by not considering Trent's circumstantial evidence and remanded the case for a new trial, with instructions to weigh all the evidence, both direct and circumstantial. *See Trent v. Valley Elec. Ass'n (Trent II)*, 111 F.3d 138, 1997 WL 191479 (9th Cir.1997) (table). After a bench trial, final judgment was entered in favor of VEA. This appeal followed.

### ANALYSIS

#### A. Law of the Case

 "Under the 'law of the case' doctrine, one panel of an appellate court will not reconsider questions which another panel has decided on a prior appeal in the same case." *Dean v. Trans World Airlines, Inc.*, 924 F.2d 805, 810 (9th Cir. 1991). This doctrine is not applicable where the previous appellate decision did not issue on the merits. *Mirchandani v. United States*, 836 F.2d 1223, 1225 (9th Cir.1988). Although the panel in *Trent II* stated that "Trent's evidence would seem to compel a judgment in her favor," this pre-evaluation is dicta and not a decision on the merits. Therefore, the panel's statement is not binding under the law of the case doctrine. *See Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir.1990).

#### B. Trial Court Findings

 A judge's findings of fact are reviewed under the clearly erroneous standard. *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1427 (9th Cir.1996). In Title VII actions, the district court's finding as to the credibility of an employer's proffered reason for adverse employment action is reviewed under the clearly erroneous standard. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 523–24, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

 The district court weighed the evidence and found that some favored VEA and some favored Trent. The court acknowledged that Trent was a good employee, but that her performance was not at issue and that a satisfactory employee can be terminated for a legitimate, non-retaliatory business reason. The court gave a detailed discussion of the evidence which led to its finding. Burasco had informed Trent of another job opening at VEA and asked her to apply for the position, but Trent failed to do so. After her termination, Trent used VEA facilities and meter books, with Dohlen's permission, to work on an outside project. Trent was also hired for temporary work at VEA with Dohlen's permission. The court found that these facts lent weight to Dohlen's testimony that he terminated her solely because her employment as a meter

reader created an unacceptable risk to VEA given her relationship with the outside reader.

The court also noted that it carefully weighed Dohlen's testimony, the only direct evidence offered by either party concerning Trent's termination. The court stated that "Dohlen's testimony created the striking and deep impression upon the Court that Dohlen was being entirely and completely truthful when he testified that he absolutely did not consider Trent's complaint ... in making the decision to terminate her."

When findings are based on trial court determinations regarding the credibility of witnesses, even greater deference is given to the court's findings, "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. Bessemer City,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citation omitted).

> [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Id.* (citations omitted). The Court also noted, "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 573–74. We cannot say that the trial judge's conclusions are clearly erroneous.

## CONCLUSION

Therefore, the judgment of the district court is affirmed.