**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Charley S. ROBINET, Defendant—Appellant.**

**No. 00–50495.**

**D.C. No. CR–00–00226–LGB–2.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 2001.

Decided Dec. 19, 2001.

---

Before BRIGHT,\* KOZINSKI, and W. FLETCHER, Circuit Judges.

## MEMORANDUM \*\*

■ 1. The "routine booking question" exception to *Miranda* permits questions pertaining to biographical information, *Pennsylvania v. Muniz,* 496 U.S. 582, 600–02, 606–07, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), provided that they are not "reasonably likely to elicit an incriminating response from the suspect," *United States v. Booth,* 669 F.2d 1231, 1237 (9th Cir.1981) (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)). In evaluating whether a question falls within the exception, the "relationship of the question asked to the crime suspected is highly relevant." *United States v. Mata–Abundiz,* 717 F.2d 1277, 1280 (9th Cir.1983) (citing *Booth,* 669 F.2d at 1238).

The agent's question about Robinet's immigration status, in response to which Robinet admitted that he had overstayed his visa, was merely a review of the biographical information provided by Robinet, and was not related to the offense that the agent was investigating. Nor was Robinet charged with violating immigration laws. We conclude, therefore, that the agent did not ask this question with the knowledge that it was "reasonably likely to elicit an incriminating response."

■ 2. Robinet's question to the agent was not an equivocal request for counsel. *See United States v. Ogbuehi,* 18 F.3d 807, 813 (9th Cir.1994) (a query "'Do I need a lawyer' or 'Do you think I need a lawyer' does not rise to the level of even an equivocal request for an attorney"); *Norman v. Ducharme,* 871 F.2d 1483, 1486 (9th Cir.

1989) (a defendant's question "if he should see a lawyer" does not constitute an equivocal request for counsel). Robinet "asked for advice, not an attorney," and so his subsequent statements are not subject to suppression. *Ogbuehi*, 18 F.3d at 814.

3. We also reject Robinet's contention that the agent coerced his confession through inaccurate promises of leniency, exacerbated by commentary that Robinet's position was "not good" for him. "An interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect." *United States v. Guerrero*, 847 F.2d 1363, 1366 (9th Cir.1988) (citations omitted). The agent also expressly warned Robinet that he "cannot make ... any promises about what will happen to [Robinet] with prosecution."

Nor was the agent's promise "accompanied by threats or other coercive practices" that would "render a subsequent confession involuntary." *Guerrero*, 847 F.2d at 1366 n. 2. The agent stopped Robinet as soon as he saw a possibility that Robinet might incriminate himself prior to being read *Miranda* rights, explained these rights in detail, clarified unfamiliar words, told Robinet that no one would hurt him during the questioning and that he could stop the interview at any time.

4. The government did not ignore Robinet's request for consular notification. The district court disbelieved Robinet's testimony that he had made such request, and we accord significant deference to the district court's credibility determination. *See Trent v. Valley Elec. Ass'n*, 195 F.3d 534, 538 (9th Cir.1999), *cert. denied*, 531 U.S. 871, 121 S.Ct. 171, 148 L.Ed.2d 117 (2000). In any event, suppression is not among the judicial remedies available for violation of Article 36 of the Vienna Convention. *United States v. Lombera–Camorlinga*, 206 F.3d 882, 885–86 (9th Cir.) (en banc), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 455 (2000).

**AFFIRMED.**