Dean **SCHMITZ**, Plaintiff—Appellant–Cross–Appellee,

v.

**M&M/MARS, a division of M&M Mars, Inc., a Delaware corporation, Defendant—Appellee–Cross–Appellant.**

Nos. 01–35899, 01–35936.

D.C. No. CV–98–00825–AJB.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 2003.

Decided Aug. 11, 2003.

Before O'SCANNLAIN, FERNANDEZ, and FISHER, Circuit Judges.

## MEMORANDUM *

After a one-week bench trial, the district court granted Dean Schmitz partial relief on his various Title VII claims against M&M/Mars ("Mars"). Schmitz appeals and Mars cross-appeals from the district court judgment. Because the relevant facts are known to the parties they are not repeated here.

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

## I

Schmitz challenges the district court's denial of his hostile work environment-based retaliation claim. Schmitz contends that the district court erred because there was sufficient evidence to establish that supervisor Carl Ruffin engaged in inappropriate, racially motivated misconduct. While it found that Ruffin could be abusive and that he lacked credibility as a witness, the district court nonetheless concluded that Schmitz failed to establish adequately that Ruffin's harassment was race based.

We agree with the district court which explicitly found that Ruffin treated other Mars associates in a similar manner. When a manager treats employees of different genders and races in the same manner, even if offensive, it is not actionable under Title VII. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *discrimination* ...."). Thus, the mere fact that Ruffin verbally accosted Schmitz, as he did to other employees under his supervision, does not by itself implicate Title VII.

Moreover, the record shows that the allegedly racially motivated decision to retain sales associate Daryl Bell despite his under–performance–the primary point of contention between Ruffin and Schmitz–was made by a reviewing panel of supervisors. While agreeing with Schmitz that Bell's performance warranted a "needs improvement" rating, the panel disagreed with his further recommendation that Bell be discharged. The decision to keep Bell as an employee, therefore, was not even within Ruffin's discretion.[1]

---

1. Schmitz alleges that Ruffin in 1996 made the following statement: "[Bell] is black. I am black. Need I say more?" Schmitz further claims that Ruffin attempted to show a

The district court further determined that during the relevant time period Schmitz never reported allegations of race-based harassment to either Steve Collins, Ruffin's manager, or to the Personnel and Organization department ("P&O").[2] When Schmitz finally did file a complaint with P&O concerning Ruffin's conduct, Mars conducted an investigation. The company concluded that although Ruffin's conduct was inappropriate, it was not racially motivated. Ruffin was subsequently disciplined by Mars for his unprofessional behavior.

Finally, the district court found that Ruffin consistently recommended to supervisory panels that Schmitz's work warranted a "meets expectation" job performance. Schmitz received the exact same rating from other managers during his tenure at Mars. Indeed, the district court found that "[n]one of Schmitz's managers believed an 'exceeds expectation' rating was warranted for him." The entirety of these factors more than support the district court's determination that Schmitz failed to state a prima facie case of retaliation. Schmitz simply failed to establish that Ruffin's mistreatment of him was racially motivated.

## II

Turning to the cross-appeal, Mars challenges the district court's finding of retaliation based on the company's refusal to interview Schmitz for a retail sales supervisor ("RSS") position. Mars notes that

the district court itself recognized that the company had a legitimate, nondiscriminatory reason for denying Schmitz an interview.

Indeed, the district court found: "All of Mars' proffered reasons for denying Schmitz the opportunity to interview for the RSS job, except for Schmitz's issuance of correspondence using Mars' logo or letterhead, were pretextual." Nevertheless, it concluded that "Schmitz's misuse of Mars' letterhead and logo were not sufficient enough reasons to deny him the opportunity to interview." Whether Mars's proffered non-pretextual reason was "sufficient" is a mixed question of law and fact, and thus we review the district court's determination de novo. See Nichols v. Azteca Restaurant Enter., Inc., 256 F.3d 864, 871 (9th Cir.2001).

■ Such analysis leads us to disagree respectfully with the district court and to conclude that Mars had ample cause to be concerned over Schmitz's improper use of company supplies. Schmitz was laid off in June 1999 and submitted his application for the RSS job opening in April 2000. That means that for almost a year Schmitz had in his possession the computer software necessary to generate Mars's logo on his personal correspondence.

Mars had no idea to whom Schmitz had been representing that he was still an employee of the company. When it received Schmitz's job application on company letterhead in a company envelope, all that

picture of Bell during the panel's assessment of his job performance. These assertions, however, were not part of the district court's factual findings, and Schmitz has not argued in his briefs that the district court's findings as to these issues were clearly erroneous.

2. Schmitz contests this finding of fact. Generally, we "accept the lower court's findings of fact unless upon review we are left with the definite and firm conviction that a mistake

has been committed." United States v. Doe, 155 F.3d 1070, 1074 (9th Cir.1998) (en banc). Here, it is impossible to see how the district court's finding is clearly erroneous. The court, in weighing the testimony of Collins and Schmitz in addition to other circumstantial evidence, reasonably concluded that Schmitz never communicated to Collins that race was a motivating factor in the demise of his relationship with Ruffin.

Mars knew was that a former employee who had been laid off in a company reorganization the previous year was sending it correspondence using its own stationery. Mars's concerns were well-founded as it later discovered that Schmitz had used the letterhead in correspondence with the EEOC among others.

Mars further claims that it takes great care in protecting against improper use of its name and logo. Nothing in the record demonstrates that this is mere pretense; nor is there any evidence to suggest that Mars has previously overlooked the misuse of its logo and letterhead by former employees. It is quite reasonable for Mars to expect its management-level employees, like the position for which Schmitz was applying, to be responsible, trustworthy, and able to represent effectively the company in a professional manner. Misappropriation and fraudulent use of the company's stationery in one's job application does not convey such a message.

We therefore conclude that Mars's justifiable concern over Schmitz's improper use of company property and false representation as a company employee is more than "sufficient" to support its rejection of Schmitz's job application.[3] Accordingly, we must reverse Schmitz's retaliation judgment.

### III

For the foregoing reasons the judgment is

AFFIRMED IN PART AND REVERSED IN PART.

FISHER, Circuit Judge, Concurring.

I concur with the majority's conclusion that Schmitz failed to prove his retaliation-based hostile environment claim, although I believe it reads *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), too broadly.

I am troubled, however, by the majority's de novo analysis of the "sufficiency" of Mars' proffered nondiscriminatory reason for denying Schmitz an interview. As I see it, either (1) the district court's finding that the reason was "insufficient" was actually a finding of pretext, which should be reviewed for clear error, *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 524, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Trent v. Valley Elec. Ass'n, Inc.,* 195 F.3d 534, 537 (9th Cir.1999), or (2) the finding that the reason was not pretextual should have ended the matter and any further review of sufficiency was an error of law. Unfortunately, the district court's findings of fact and conclusions of law are not a model of clarity and we are left wondering what the court intended.

The district court might have meant, despite her word choice, that she found Mars' sixth explanation—that it refused to interview Schmitz because he submitted his application on company letterhead—pretextual. Pretext may be shown "indirectly by showing that the employer's proffered explanation is unworthy of credence." *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1220 (9th Cir.1998). The district court appeared to find this type of pretext, for instance, in Mars' explanation that it refused to interview Schmitz because he failed to participate in an exit interview when he was initially laid off. Mars had previously interviewed Schmitz for another position despite being aware of this same failure and thus, the explanation

---

**3.** Because we conclude that Mars's failure to interview Schmitz was not unlawful retaliation, we need not address Schmitz's further claim that he is entitled to economic damages in the form of lost income.

was "unworthy of credence." But an employer's proffered reason may also be found pretextual if the plaintiff persuades "the court that a discriminatory reason more likely motivated the employer." *Id.* The district court might have meant that Mars' sixth explanation was not "unworthy of credence" but was insufficient to convince her that discrimination was not the more likely motivation behind Mars' decision. Although mislabeled, this would be a finding of pretext subject to clear error review.[1] *Trent*, 195 F.3d at 537.

However, in light of the district court's explicit statement that Mars had a non-pretextual reason to refuse Schmitz an interview, I cannot strain to interpret the district court as meaning just the opposite. Thus, I take the district court's statement on pretext at face value as a finding that Mars was motivated by a non-discriminatory reason.

Once the district court concluded Mars' explanation was not pretextual, the analysis should have ended. The analysis under Title VII does not inquire into the sufficiency of an employers justification in any sense other than pretext determinations. Accordingly, I cannot join in the majority's de novo review of the sufficiency of Mars' justification. It relies on *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 871 (9th Cir.2001), for the proposition that questions regarding sufficiency of a non-pretextual reason are mixed questions of law and fact. *Nichols*, however, never addressed such "sufficiency" determinations. *Id.* (noting that whether a plaintiff establishes the elements necessary to a sexual harassment or retaliation claim is a mixed question of law and fact). On the other hand, to the extent the majority's "sufficiency" analysis is actually a de novo review of whether Mars' justification was pretext, de novo review is inappropriate. Findings of pretext are pure questions of fact, which we must review for clear error. *Hicks*, 509 U.S. at 524; *Trent*, 195 F.3d at 537.

Because the district court erred in conducting a "sufficiency" analysis after determining that one of Mars' proffered reasons for its actions was not pretextual, I concur in the result reached by the majority.

---

1. An alternative understanding of the district court's "sufficiency" statement might be that, under a mixed motive analysis, although Mars was motivated by both legitimate and illegitimate reasons, Mars would not have refused to interview Schmitz in the absence of the retaliatory motive. *Desert Palace, Inc. v. Costa,* —— U.S. ——, 123 S.Ct. 2148, 2150, 156 L.Ed.2d 84 (2003). Such a finding would be reviewed for clear error. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 255, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). However, from the record I must conclude that the district court proceeded exclusively under the traditional *McDonnel Douglas* model. The district court did not explicitly refer to a mixed motive theory, nor was it argued either in the district court or on appeal.