Victoria L. TRENT, aka Victoria L. Winebarger, Plaintiff–Appellant,

v.

VALLEY ELECTRIC ASSOCIATION INC.; Richard Burasco; Ross Dohlen, Defendants–Appellees.

No. 93–15458.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 17, 1994 *.

Decided Dec. 1, 1994.

* The panel unanimously found this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Ian Christopherson, Burke & Christopherson, Las Vegas, NV, for plaintiff-appellant.

Renee R. Reuther, Jones, Jones, Close & Brown, Las Vegas, NV, for defendants-appellees.

Before: LAY,** PREGERSON, and O'SCANNLAIN, Circuit Judges.

** The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sit-

PREGERSON, Circuit Judge:

Victoria Trent appeals the district court's grant of partial summary judgment in favor of defendants on her retaliatory discharge claim under § 704 of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–3(a) (1981). We reverse and remand.

## · BACKGROUND

On February 8, 1988, the Valley Electric Association ("VEA"), a rural public utility company, hired Victoria Trent to read residential electric meters. On July 20, 1988, she attended a mandatory safety meeting. VEA hired Ruralite Services, Inc. to conduct the meeting. During his presentation, the instructor from Ruralite used foul language and made a series of sexually offensive references. These included a description of the sexual experiences of linemen at a Nevada brothel. Trent was the only woman present at the lecture.

Trent complained about the offensive remarks to Richard Burasco, VEA's office manager. On August 19, 1988, Burasco asked Trent to put her complaint in writing. She submitted a written report to Ross Dohlen, VEA's general manager and later spoke with him about the safety meeting incident. When Trent remarked she "was not one of the boys," Dohlen replied that "for some purposes" she was. On August 31, 1988, Dohlen wrote to Ruralite complaining about the lecturer's offensive comments. On September 19, 1988, VEA fired Trent.

## ANALYSIS

■ We review a grant of summary judgment de novo. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Trent challenges her dismissal under the "opposition clause" of § 704 of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–3(a) (1981). The clause makes it illegal for an employer to discriminate against an employee where the employee "has opposed any practice made an unlawful employment practice by this subchapter...." Courts have interpreted "unlawful employ-

ting by designation.

ment practices" to include a panoply of actions involving discrimination and sexual harassment.

■ To succeed on a retaliation claim, Trent must first establish a prima facie case. *E.E.O.C. v. Hacienda Hotel,* 881 F.2d 1504, 1513 (9th Cir.1989). She must demonstrate (1) that she was engaging in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between her activity and the employment decision. *Id.* at 1513–14.

In granting summary judgment in favor of VEA, the district court concluded that Trent failed as a matter of law to establish the first element of a prima facie case. We disagree.

The district court, relying on *Silver v. KCA, Inc.,* 586 F.2d 138 (9th Cir.1978), found that because Trent complained about the practice of an outside consultant, not her employer, she was not protesting an "unlawful employment practice" under Title VII, and thus her conduct did not constitute a "protected activity." In *Silver,* the plaintiff was fired after confronting a co-employee and protesting a racially offensive remark he had made about her trainee. Her protest was directed solely to the employee who made the offensive remark. We said that "[t]he opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." *Id.* at 141.

Whether Ruralite is a "private individual" is questionable. VEA did, in fact, hire Ruralite to train its employees, a function often carried out by company supervisors. We have held that when an employee protests the actions of a supervisor such opposition is a "protected activity." *E.E.O.C. v. Crown Zellerbach Corp.,* 720 F.2d 1008, 1014 (9th Cir.1983).[1]

■ But we need not delve into the subject whether "protected activity" under Title VII includes an employee's protest to her employer of an outside consultant's conduct. As we first explained in *Sias v. City Demon-*

*stration Agency,* 588 F.2d 692, 695 (9th Cir. 1978), a plaintiff does not need to prove that the employment practice at issue was in fact unlawful under Title VII. To establish the first element of a prima facie case, Trent must only show that she had a "reasonable belief" that the employment practice she protested was prohibited under Title VII. *Id.* at 696; *see also E.E.O.C. v. Crown Zellerbach Corp.,* 720 F.2d at 1013 ("opposition clause protection will be accorded whenever the [employee's] opposition is based on a 'reasonable belief' that the employer has engaged in an unlawful employment practice"). Most courts agree. *See Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1137–38 (5th Cir.1981) (employee belief that conduct being opposed was discriminatory must only be "reasonable") (quoting *Hearth v. Metropolitan Transit Commission,* 436 F.Supp. 685, 688–89 (D.Minn.1977)), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982); *Sisco v. J.S. Alberici Construction Co.,* 655 F.2d 146, 150 (8th Cir. 1981) (same), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982); *Berg v. La Crosse Cooler Co.,* 612 F.2d 1041, 1045–46 (7th Cir.1980) (employee need only have a "reasonable belief" that the practice she opposes is unlawful); *Hearth,* 436 F.Supp. at 688–89 (if employee "reasonably believes" that discrimination exists, his or her protest is a protest of an unlawful employment practice under Title VII); *see also* Barbara Lindemann & David D. Kadue, *Sexual Harassment in Employment Law* 280 (1992) ("The EEOC and most courts have stated that § 704(a) protects opposition [to an employment practice] so long as the employee has a reasonable and good-faith belief that the practice opposed constituted a violation of Title VII").

This reading of Title VII is consistent with its purpose to eliminate discrimination in employment. To find that Title VII's opposition clause only protects those who can prove that the conduct at issue is actually unlawful "[w]ould not only chill the legitimate assertion of employee rights under Title VII but

---

1. At least one court has held employers liable for acts of outside contractors under Title VII. *See People v. Hamilton,* 125 A.D.2d 1000, 511 N.Y.S.2d 190 (N.Y.Sup.Ct.1986) (employer liable when it failed to discharge an independent polygraph operator who sexually harassed employ-

ees); *see also Waltman v. Int'l Paper Co.,* 875 F.2d 468 (5th Cir.1989) (triable issue whether employer took prompt remedial action in response to allegations of sexual harassment, some involving employees of independent contractor).

would tend to force employees to file formal charges rather than seek conciliation or informal adjustment of grievances." *Sias,* 588 F.2d at 695.

■ Trent need only show that she had a reasonable belief that it was unlawful under Title VII for her to be subjected to a series of sexually offensive remarks at a seminar her employer required her to attend. The record in this case could support a finding that Trent had such a reasonable belief. After all, Trent was obligated to attend the safety lecture to learn about an essential aspect of her job. She certainly would be justified in believing that Title VII would protect her from the offensive remarks she endured while attending the meeting.

For the reasons set forth above, we conclude that the record before the district court on summary judgment would support a finding that Trent engaged in a "protected activity"—the first element of a prima facie case of retaliatory discharge.[2] The district court erred when it found to the contrary. Accordingly, we reverse and remand.

2. We do not decide whether or not summary judgment would be appropriate on the second or third elements of Trent's prima facie case.