76 F.3d 386
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Marilyn HEDGEPETH, Plaintiff-Appellant,
v.
KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST, an Oregon
non-profit corporation; Kaiser Foundation
Hospitals, a California non-profit
corporation, Defendants-Appellees.
 No. 94-36003.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 13, 1995.
Decided Jan. 25, 1996.
 
 Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 I. Federal Age Discrimination and Retaliation
 
 
 3
 The rules regarding burdens of proof developed in cases under Title VII are applicable in cases under the Age Discrimination in Employment Act. Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir.1994); Douglas v. Anderson, 656 F.2d 528 (9th Cir.1981).
 
 A. Age Discrimination
 1. Prima Facie Case
 
 4
 To state a prima facie case of age discrimination, plaintiff must generally show she: 1) was a member of the protected class (between the ages of 40 and 70); 2) was performing her job in a satisfactory manner; 3) was discharged; and 4) was replaced by a substantially younger employee with equal or inferior qualifications. Wallis, 26 F.3d at 891; Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir.1990). Viewing the evidence in the light most favorable to Hedgepeth, she offered the "minimal" proof required to establish a prima facie case. Wallis, 26 F.3d at 889. Hedgepeth was 56 years old in 1991, when she was hired for the interim position rather than as a permanent public health nurse. She offered evidence that her work had been generally satisfactory until that time. To explain the decision not to hire her, Barker could only point to "feelings" that Hedgepeth "would not stay with it for more than one year." Hedgepeth was treated less favorably than other, younger, similarly situated employees: she was put on probation, she was held to higher standards, and she was disciplined for refusing to see a patient whom another nurse allegedly asked not to see.
 
 2. Kaiser's Nondiscriminatory Reasons
 
 5
 Kaiser offered legitimate, nondiscriminatory reasons for its actions. Barker chose not to hire Hedgepeth for the permanent position because Barker had developed concerns about Hedgepeth's performance during the month of August, 1991; the same concerns prompted her to place Hedgepeth on a work plan. The "performance expectations" set out in the work plan focus on tasks Hedgepeth's previous supervisors had identified as "areas for improvement." Barker, the only person alleged to have discriminated or retaliated against Hedgepeth, played no part in making holiday work assignments. Kaiser claims Hedgepeth was suspended on Thanksgiving day solely because of her insubordination; the other nurse on duty was not disciplined because she did not refuse to perform the procedure, and Barker unilaterally made the decision to reassign the patient after she noted the other nurse was sick. Barker processed voluntary termination papers for Hedgepeth because Hedgepeth had failed to contact her about her employment status, despite her supervisor's attempts to reach her.
 
 3. Evidence of Pretext
 
 6
 Hedgepeth failed to show Kaiser's explanations were pretextual. She offered no statistical evidence of age discrimination, or even anecdotal evidence that similarly situated younger workers at Kaiser were better treated. She offered "no more than the minimum" proof necessary to establish a prima facie case; Wallis, 26 F.3d at 890; simply recharacterizing that same evidence as somehow suspicious or contradictory is not sufficient to raise a triable issue of fact. Id. at 890.
 
 
 7
 Nor does the Oregon Bureau of Labor and Industries' Civil Rights Division's ("BOLI") finding of substantial evidence of age discrimination and retaliation raise a triable issue of fact. Ordinarily, "prior administrative findings made with respect to employment discrimination may ... be admitted as evidence at a federal-sector trial de novo" pursuant to Fed.R.Ev. 803(8)(c). Chandler v. Roudebush, 425 U.S. 840, 863 (1976). However, the hearsay exception is limited. It applies to
 
 
 8
 factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
 
 
 9
 Fed.R.Ev. 803(8)(c) (emphasis supplied). The Supreme Court has noted that "[t]his trustworthiness inquiry ... [is the] primary safeguard against the admission of unreliable evidence.... [A] trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof ... that she determines to be untrustworthy." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167 (1988). The role of the court in determining trustworthiness is not to assess the report's credibility, but to evaluate whether the report was compiled or prepared in a way that indicates its reliability. Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1305-08 (5th Cir.1991).
 
 
 10
 The BOLI finding is untrustworthy on its face. The report admits the investigator had access to almost no relevant information from Kaiser because Kaiser "has not permitted an opportunity for [its nondiscriminatory] reasons to be tested for pretext." The report simply concludes "[i]n the absence of satisfactory evidence to the contrary, it appears that Complainant's age and opposition to unlawful practices were key factors in Respondent's decision to terminate Complainant." Since the author concedes he was unable to fully investigate the claim, the BOLI determination is inadmissible under FRE 803(8)(c).
 
 
 11
 The district court did not err in granting summary judgment to Kaiser on Hedgepeth's age discrimination claim.
 
 B. Retaliation
 1. Prima Facie Case
 
 12
 To establish a prima facie case of retaliatory discharge, Hedgepeth must show that 1) she engaged in a protected activity; 2) she was subjected to an adverse employment action after doing so; and 3) a causal link exists between the protected activity and the adverse employment action. Wallis, 26 F.3d at 891. She need not have a valid age discrimination claim to prevail on a retaliation claim. Trent v. Valley Electric Ass., Inc., 41 F.3d 524, 526 (9th Cir.1994).
 
 
 13
 Hedgepeth must show that her opposition was based on a "reasonable belief that the employment practice she protested was prohibited under Title VII." Id., citing Sias v. City Demonstration Agency, 588 F.2d 692, 695 (9th Cir.1978). Hedgepeth threatened to file a grievance because Kaiser initially did not hire her for the full-time nurse position. Viewing the evidence in the light most favorable to her, she raised a triable issue as to whether she was engaged in a "protected activity" when she threatened to file a grievance in the wake of the alleged age discrimination, despite the fact that she didn't specifically state that her threatened grievance was predicated upon age discrimination. To "oppose" age discrimination (and therefore be "engaged in a protected activity") for purposes of Title VII, an employee need not specifically state to her employer that she objects to the alleged age discrimination identified as such; she can object in less specific terms. See Morales v. Merit Systems Protection Board, 932 F.2d 800, 901 (9th Cir.1991) (employee engaged in protected activity where he threatened to file an "EEO lawsuit" generically, with no reference to age or race discrimination and complained to his supervisor that "people with less education and less experience than he were being promoted before he was"). Kaiser points to no authority requiring Hedgepeth to use the catch phrase "age discrimination" when she threatened to grieve. The absence of such specificity is not fatal to Hedgepeth's prima facie case.
 
 
 14
 Hedgepeth offered evidence that she was subjected to adverse employment actions leading eventually to her termination after she threatened to grieve. "Causation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge." Miller v. Fairchild, 797 F.2d 727, 731 (9th Cir.1986). We conclude Hedgepeth made out a prima facie case of retaliation.
 
 2. Non-Discriminatory Reasons
 
 15
 Kaiser offered legitimate reasons for the actions taken against Hedgepeth. See § I.A.2 supra.
 
 3. Evidence of Pretext
 
 16
 Hedgepeth's retaliation claim fails because she has not provided evidence sufficient for a rational trier of fact to find a retaliatory motive. Again, she presented no evidence beyond that required to make out a prima facie case; given the legitimate nondiscriminatory reasons for its conduct established by Kaiser, no jury could find that subsequent adverse employment actions were in retaliation for her opposition to age discrimination rather than for the reasons proferred by Kaiser.
 
 
 17
 II. State Age Discrimination and Retaliation Claims
 
 
 18
 The parties agree that Oregon has expressly adopted the Supreme Court's requirements for establishing a prima facie Title VII case set out in Burdine, supra. Henderson v. Jantzen, Inc., 79 Or.App. 654, 656 (1986). The Ninth Circuit has recently held that Oregon law differs from federal discrimination law in that it requires plaintiffs to show no more than a prima facie case of discrimination to survive summary judgment:
 
 
 19
 Because ... Messick established a prima facie case of discrimination, summary judgment on the Oregon Age Discrimination Act claim was also inappropriate. See Henderson v. Jantzen, ... (rejecting three-part burden shifting analysis applied under federal discrimination law and requiring only that plaintiff establish prima facie case of discrimination to avoid summary judgment, even where defendant asserted nondiscriminatory reason for action.)
 
 
 20
 Messick v. Horizon Industries, Inc., 62 F.3d 1227, 1232 (9th Cir.1995).
 
 
 21
 Hedgepeth's state law claims survive summary judgment because she has made out a prima facie case of age discrimination and retaliation.
 
 III. Wrongful Discharge
 
 22
 Hedgepeth has not adduced sufficient evidence to survive summary judgment on her claim for wrongful discharge. Oregon recognizes the intentional tort of wrongful discharge if an employer dismisses an employee either for fulfilling an important societal obligation or for pursuing a right of important public interest related to his role as an employee. Delaney v. Taco Time Int'l., 297 Or. 10, 15-16 (1984). Assuming Hedgepeth's claim falls in the latter category, she has presented no evidence she was dismissed in retaliation for pursuing her legal rights beyond showing that she threatened to grieve Barker's decision and Barker ultimately terminated her. Even though Hedgepeth may have harbored a reasonable belief that she was the victim of age discrimination, she did not express that opinion to anyone in a position to retaliate against her, particularly Barker. She simply did not raise the issue in a manner that could have triggered retaliation. Because no rational trier of fact could find Hedgepeth was discharged because she pursued her right to be free from age discrimination, summary judgment was proper.
 
 
 23
 AFFIRMED IN PART, REVERSED IN PART. Each party to bear its own costs and fees.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3