EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,

v.

MICRON TECHNOLOGY, INC.;
Micron Communications, Inc.,
Defendants–Appellees.

No. 00–35525.

D.C. No. CV–98–00506–BLW.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 2002.

Decided March 28, 2002.

Before ALARCÓN, and SILVERMAN,

Circuit Judges, and TEILBORG,* District Judge.

MEMORANDUM **

The Equal Employment Opportunity Commission (the "EEOC") filed this action against Micron Communications, Inc. ("MCC") alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The EEOC alleged in its complaint that MCC terminated the employment of Marcia Cook ("Ms.Cook") in retaliation for the letter she wrote to David Radeke, her supervisor, in which she requested a transfer because she was being subjected to an "ongoing hostile work environment." The EEOC has appealed from the order granting MCC's motion for summary judgment. The EEOC seeks reversal on the ground that genuine issues of material fact exist regarding whether the reasons articulated by MCC for discharging Ms. Cook are pretexual. We affirm because we conclude that the EEOC failed to demonstrate that the reasons articulated by MCC for discharging Ms. Cook are pretexual.

I

A.

Ms. Cook was hired by MCC as a receptionist on July 30, 1996. Her supervisor was John Coots ("Mr.Coots"), the facilities manager. In November 1996, she was also given the responsibility of serving as security coordinator.

Ms. Cook had been married previously. Mr. Coots was going through a divorce. Mr. Coots discussed intimate details with Ms. Cook about the nature of his sexual relations with his wife.

On January 21, 1997, Mr. Coots told Ms. Cook about a dream he had in which Ms. Cook and he had been lying on a couch together. After describing his dream, Mr. Coots put his hand on Ms. Cook's fingers, and told her he had romantic feelings and intentions about her. Ms. Cook immediately asked Mr. Coots whether he would support a transfer for her. She told him she was "uncomfortable with this." Mr. Coots agreed to support her request for a transfer. He stated he could not supervise her effectively because of his personal feelings about her.

On January 27, 1997, Ms. Cook complained about Mr. Coots's inappropriate comments and behavior to MCC personnel executives, including Chris Gebhardt ("Ms.Gebhardt"), MCC's Human Resource Manager. On the same date, Ms. Gebhardt advised Ms. Cook that she would no longer be supervised by Mr. Coots. David Radeke ("Mr.Radeke") became her supervisor.

Ms. Gebhardt and Mr. Radeke met with Ms. Cook. They informed her that she should immediately report any inappropriate conduct by any employee. Ms. Cook agreed to continue her present job duties and give the change in supervisors a try.

MCC issued a written reprimand to Mr. Coots and ordered him to attend sexual harassment training courses. Mr. Coots was also ordered not to retaliate against Ms. Cook because she had complained about his inappropriate behavior. Mr. Coots did not repeat his harassing behavior during the remainder of Ms. Cook's employment at MCC.

* Honorable James A. Teilborg, United States District Judge for the District of Arizona, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

## B.

From January 28, 1997 through May 15, 1997, Mr. Radeke met with Ms. Cook approximately every week. During one of these meetings, Ms. Cook expressed displeasure with her current position. She told Mr. Radeke that "God didn't intend for her to be a receptionist," and asked to be transferred to another type of work. In response to Ms. Cook's request for a transfer, Mr. Radeke suggested that she consider working in production. She rejected the recommendation. Mr. Radeke also recommended that she transfer to the marketing or sales department. Again, Ms. Cook refused. Ms. Cook told Mr. Radeke that she was interested in computer programming. Mr. Radeke suggested that Ms. Cook schedule a meeting with an information systems manager to pursue this interest. Ms. Cook did not follow this advice because she did not believe she had the "credentials" for such a position.

In late February or early March 1997, Ms. Cook asked to transfer to the company's Lehi, Utah facility because she had been told that a position might become available there within approximately six months. With Mr. Radeke's approval, Ms. Cook took a vacation day to visit that facility to explore this transfer opportunity. For personal reasons, Ms. Cook ultimately withdrew her name from consideration for the transfer.

## C.

On February 28, 1997, Ms. Cook violated security protocol by personally escorting a former MCC employee through the MCC facility without obtaining security clearance for the visitor. Ms. Cook was reprimanded for the incident. A written report of this incident was placed in her personnel file.

## D.

Mr. Radeke and Ms. Cook had a meeting on April 25, 1997 during which they discussed Ms. Cook's job performance. Prior to this meeting, Mr. Radeke had instructed Ms. Cook that she needed to define her career goals. Mr. Radeke directed Ms. Cook to complete a career evaluation form he had developed to help her identify meaningful transfer opportunities. Ms. Cook had not completed the career evaluation form as of the April 25, 1997 meeting.

During this meeting, Mr. Radeke advised Ms. Cook that he would not support her desire to transfer out of her current position until she completed the career evaluation form. At the same meeting, Mr. Radeke explained to Ms. Cook that he was doing everything to assist her with her career while also providing a harassment-free workplace. He felt that Ms. Cook was failing to do anything to improve her job performance.

Mr. Radeke also expressed his concern about negative comments he had overheard Ms. Cook make to MCC contractors, suppliers, and employees regarding MCC and its management. Mr. Radeke reminded Ms. Cook that she had not completed MCC's security and policy procedure manual, a project which had been assigned to her. The manual was to be used to instruct other security personnel regarding their duties when they were required to substitute for Ms. Cook during her absence. During the April 25, 1997 meeting, Ms. Cook told Mr. Radeke that she was uncomfortable working in close proximity to Mr. Coots, even though Mr. Coots had not acted inappropriately toward her since she had complained about his behavior on January 27, 1997.

## E.

Following the April 25, 1997 meeting, Ms. Cook was absent from work on two

dates, which resulted in 2.5 absences in the 30 days preceding her May 15, 1997 termination date. MCC's policy permitted only 1.5 absences in any 30-day period.

At 7:32 a.m. on May 9, 1997, Mr. Radeke sent Ms. Gebhardt an e-mail expressing his concern about Ms. Cook's absences and the problem this caused in finding someone to fill in for her as security coordinator. Mr. Radeke informed Ms. Gebhardt that he would like to talk to her about "how to proceed" with Ms. Cook.

On the evening of May 9, 1997, Ms. Cook sent a letter to Mr. Radeke, with copies to Ms. Gebhardt and MCC's Chief Executive Officer John Tuttle ("Mr. Tuttle"). She stated that she was "very uncomfortable" working with Mr. Coots, and complained that her work environment was so "hostile" that she could not effectively do her job. She requested a transfer to another position within MCC. She also stated that she would seek legal counsel if "an agreeable solution" could not be found by June 1, 1997.

On May 10, 1997, Mr. Radeke spoke with Ms. Gebhardt about Ms. Cook's job performance. On May 12, 1997, he met with Ms. Gebhardt and Mr. Tuttle to discuss terminating Ms. Cook. Mr. Tuttle approved Ms. Cook's termination on May 12, 1997. On May 15, 1997, Mr. Radeke completed a discharge request for Ms. Cook. The discharge request listed five reasons for firing Ms. Cook: (1) "Inability to perform job as indicated in letter;" (2) "Not happy in position which is also presenting less than professional image;" (3) "Absences are excessive;" (4) "Not clear on career objectives thus lacking commitment to the job;" and (5) "Lack of trust." Mr. Radeke testified at his deposition regarding the first reason he listed for firing Ms. Cook. He testified that he believed that Ms. Cook's May 9, 1997 letter "was an indication that she was not willing to do her job." Mr. Radeke also testified that he interpreted Ms. Cook's statement in her letter to mean that Ms. Cook believed, as he did, "that she was not doing her job."

## II

The district court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. This court has jurisdiction over the EEOC's timely appeal pursuant to 28 U.S.C. § 1291.

## III

The EEOC contends that summary judgment was improper because it has demonstrated that a genuine issue of material fact exists regarding whether MCC's proffered explanations for discharging Ms. Cook were a pretext for retaliation because she engaged in a protected activity in protesting an ongoing hostile work environment. We review *de novo* a district court's order granting summary judgment. *Reese v. Jefferson Sch. Dist.*, 208 F.3d 736, 738 (9th Cir.2000).

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any ... unlawful employment practice...." 42 U.S.C.2000e–3(a) (2000). The term "unlawful employment practice" includes discrimination based on gender and sexual harassment. *Trent v. Valley Elec. Ass'n, Inc.*, 41 F.3d 524, 526 (9th Cir.1994).

The district court concluded that the EEOC had presented sufficient facts in opposition to the motion for a summary judgment to establish a prima facie case of retaliation. We agree. To establish a prima facie case of retaliation, the evidence must show that an employee was discharged in connection with having protested that he or she was subjected to a hostile

workplace environment. *See Brooks v. City of San Mateo,* 229 F.3d 917, 927 (9th Cir.2000). In her May 9, 1997 letter to her supervisor, Ms. Cook alleged that her work environment was hostile because she continued to have frequent contact with Mr. Coots in performing her duties. The fact that an employee is discharged shortly after complaining about a hostile workplace environment is sufficient to support a rebuttable inference that the termination decision was motivated by the protected activity. *See Passantino v. Johnson & Johnson Consumer Prods. Inc.,* 212 F.3d 493, 507 (9th Cir.2000) (noting that causation can be inferred from timing alone). The EEOC satisfied each of the elements of a prima facie case of retaliation.

If a prima facie case was presented, "the burden of production shifts to the employer to present legitimate reasons for the adverse employment action." *Brooks,* 229 F.3d at 928. "Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext." *Id.* "Only then does the case proceed beyond the summary judgment stage." *Id.*

A plaintiff "can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* 225 F.3d 1115, 1127 (9th Cir. 2000).

The EEOC maintains that it presented direct evidence of retaliation in opposition to the motion for a summary judgment. "Direct evidence is evidence which, if believed, proves the fact [of retaliatory animus] without inference or presumption." *Bergene v. Salt River Project Agric. Improvement & Power Dist.,* 272 F.3d 1136, 1141 (9th Cir.2001) (citation omitted). If direct evidence of retaliation is presented "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Blue v. Widnall,* 162 F.3d 541, 546 (9th Cir.1998).

MCC has urged us not to consider the EEOC's argument that it presented direct evidence of retaliation because the EEOC failed to argue this theory to the district court. While conceding that it "may not have used the descriptive term 'direct' in the district court," it correctly notes that the district court ruled on this issue. The district court ruled that there is "no direct evidence of statements . . . that [Ms.] Cook was fired for engaging in protected activity." In determining whether an issue was properly raised in the district court, we review the record to ascertain whether "the argument [was] raised sufficiently for the trial court to rule on it." *In re E.R. Fegert, Inc.,* 887 F.2d 955, 957 (9th Cir. 1989). In light of the district court's express ruling that direct evidence of retaliation was not presented, we will consider the correctness of that ruling.

■ The EEOC contends that Mr. Radeke's "written and oral statements comprise direct evidence of retaliation." It asserts that Mr. Radeke explained in his deposition "that the first reason he listed on [Ms.] Cook's dismissal form-'Inability to perform job as indicated in letter'-refers to Cook's statement in her May 9th letter that she 'consider[s] this to be an ongoing hostile work environment in which I cannot effectively do my job.'" The EEOC also states that Mr. Radeke "admitted in his deposition that Cook's May 9th letter was the primary impetus for his decision to fire her." If this recitation of the evidence in the record were accurate, we might well conclude that it constitutes direct evidence of retaliation. It is inaccu-

rate. There is no direct evidence of retaliation in this case. MCC offered evidence that prior to receiving Ms. Cook's May 9, 1997, Mr. Radeke had called for a meeting to discuss "how to proceed with this individual" due to her inadequate job performance, her absenteeism, the disloyal statements she made about MCC to other MCC employees and suppliers, her failure to complete the security and policy procedure manual, and her breach of MCC's security protocols. Mr. Radeke's concern about Ms. Cook's poor job performance was corroborated by the statement in her May 9, 1997 letter that she "cannot effectively do [her] job." Mr. Radeke did not state in his deposition that Ms. Cook was discharged because she complained about "an ongoing hostile work environment." To construe Mr. Radeke's reference to the May 9, 1997 letter as demonstrating retaliatory animus, we would be required to infer that his real motivation was due to her protected activities. As noted above, if an inference or presumption is required to prove retaliation, it is not direct evidence. As an example of direct evidence of retaliatory animus, the EEOC has referred us to *Chuang v. University of California Davis, Board of Trustees*, 225 F.3d at 1128. In *Chuang*, the evidence showed that a board member stated that "two Chinks" in the pharmacology department were "more than enough." *Id.* Unlike the evidence before us, no inference was necessary in *Chuang* to expose the employer's retaliatory animus.

█ The EEOC also argues that indirect, circumstantial evidence shows that the reasons MCC gave for firing Ms. Cook were pretextual, and that the real reason she was fired was because she complained about being subjected to a continuing hostile work environment. Notably, the EEOC neither argued to the district court nor argues here that MCC's first two reasons for firing Ms. Cook, "[i]nability to perform job as indicated in letter" and "[n]ot happy in position," constitute circumstantial evidence of retaliation. The record shows that Mr. Radeke was prepared to recommend to MCC that it take an adverse employment action against Ms. Cook because of her poor job performance and disloyalty *prior* to becoming aware of her May 9, 1997 letter. *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (holding that it is essential to proving retaliation that the employer was aware that the plaintiff had engaged in protected activity).

We have held that "[c]ircumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene*, 272 F.3d at 1142. The EEOC failed to present specific, substantial evidence of pretext, lack of credibility, or untruthfulness regarding Mr. Radeke's deposition testimony. Instead, it merely argues that a reasonable jury could disbelieve MCC's explanation that Ms. Cook was fired because of her poor job performance and disloyal comments about MCC.

The EEOC has failed to raise a genuine issue of material fact as to the believability of MCC's remaining three reasons for firing Ms. Cook, i.e., "Absences are excessive;" "Not clear on career objectives thus lacking commitment to the job;" and "Lack of trust."

First, regarding Ms. Cook's excessive absences, MCC's policies allowed Ms. Cook 1.5 absences in a 30–day period. It is undisputed that she exceeded that number in the 30 days preceding her termination.

Second, concerning Mr. Radeke's statement that Ms. Cook was "[n]ot clear on career objectives thus lacking commitment to the job," the undisputed facts show that Mr. Radeke asked Ms. Cook to fill out a career objective form, after she had rejected several opportunities to transfer to other departments because she was dissatis-

fied working as a receptionist. She failed to do so. Ms. Cook's reason for not completing the form, i.e., that she did not relate to it, suggests that she felt she was qualified to transfer without completing the form. This reason for failing to complete the form is insufficient to create a genuine issue of material fact. *Blue*, 162 F.3d at 546 (citing *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir.1986) (stating that subjective personal judgments of qualification do not raise a genuine issue of material fact)); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir.1996) (stating that "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact.").

Finally, regarding the "lack of trust" reason for discharging Ms. Cook, the EEOC failed to offer any evidence that demonstrates that this statement was pretextual or not credible.

## IV

Because the EEOC has failed to demonstrate that Ms. Cook's employment was not terminated for legitimate, non-pretextual business reasons, the judgment of the district court is AFFIRMED.

SILVERMAN, Circuit Judge, dissenting.

SILVERMAN, Circuit Judge.

I respectfully dissent. As I see it, Radeke's specific reference to Cook's May 9th letter complaining of a hostile work environment, coupled with the timing of her firing—six days after Cook sent her letter—are sufficient to raise a question of fact as to whether Micron's actions were retaliatory. I would reverse and remand for trial.