Elen **BAHR**, Appellant,

v.

**CAPELLA UNIVERSITY**, Respondent.

No. A08–1367.

Court of Appeals of Minnesota.

May 19, 2009.

Joni M. Thome, Frances E. Baillon, Halunen & Associates, Minneapolis, for appellant.

Thomas A. Harder, Foley & Mansfield, PLLP, Minneapolis, for respondent.

Lori Swanson, Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, for amicus curiae Commissioner of the Minnesota Department of Human Rights.

Considered and decided by SCHELLHAS, Presiding Judge; MINGE, Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

This appeal arises from the termination of appellant Elen Bahr's employment and the district court's dismissal of her subsequent reprisal complaint for failure to adequately state a claim. Appellant argues that the district court erred in concluding that to properly plead a reprisal claim under the Minnesota Human Rights Act (MHRA), a plaintiff must plead facts constituting actual occurrence of illegal discrimination. She contends that her complaint sufficiently pleads reprisal premised on her good-faith, reasonable belief that respondent discriminated in refusing to

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

place another employee on a performance improvement plan. We reverse.

## FACTS

In June 2006, while employed by respondent Capella University, appellant assumed supervisory duties over L.A., an African–American woman who was transferred to appellant's department. By September 2006, it was apparent to appellant that L.A. was failing to meet performance expectations.

Despite appellant's effort to coach L.A. to improve her performance, L.A. demonstrated little to no improvement in the following months. In January 2007, appellant contacted respondent's human resources department (HR) for guidance, stating her concerns to Nichole Scott, respondent's senior HR generalist.

In February 2007, after meeting with L.A., appellant communicated to HR her concern that L.A.'s poor performance was adversely affecting the entire team. On March 6, 2007, appellant again met with L.A. to discuss performance issues. L.A. stated that she was overwhelmed and that her job was physically and emotionally taxing. In response, appellant took several steps to assist L.A., including shifting some of her responsibilities to another employee and agreeing to meet for 30 minutes each week to monitor L.A.'s performance.

On March 7, 2007, appellant met with her supervisor, Brad Frank, Nichole Scott, and another HR representative, Seth Lockner, to discuss L.A.'s work performance. Appellant believed L.A.'s poor performance warranted a formal performance improvement plan (PIP). Lockner demanded that appellant move slowly with L.A. and insisted that appellant could not move forward with any formal PIP. Appellant perceived this resistance to a PIP to be "highly unusual" because appellant had implemented PIPs with two employees within the previous year.

During March and April 2007, appellant continued to assist L.A. with her performance issues. After a discussion in late March with L.A., appellant summarized the conversation to Nichole Scott and reiterated the negative effect that L.A.'s poor performance was having on morale and behavior in her department. Again, Scott cautioned appellant "to move more slowly on the matter [with L.A.] than she had ever moved on a performance issue." Scott told appellant that "[L.A.] 'has a history' in the organization that [was] racially based and warned that any action could result in a discrimination lawsuit" against respondent. Scott added that L.A.'s situation was known and monitored by the highest levels in the organization, including the President and CEO of the university. Scott provided no guidance to appellant but stated that she expected appellant's team to have enough confidence in appellant's ability to know that any performance issues would be resolved. Appellant asked Scott how long she would be expected to rely on her good reputation with her team without having the ability to go forward as she deemed appropriate. Scott stated that she could not answer that question.

By the end of March, appellant had completed all of her performance evaluations and met with all of her team members, with the exception of L.A. Scott required that L.A.'s review be sent to her and respondent's legal department before it was shared with L.A. As a result, L.A.'s review was delayed by a few weeks. Appellant was instructed not to inform L.A. that her review was going through this special process.

Following her review of the first draft of L.A.'s review, Scott instructed appellant to

minimize the performance issues raised. Scott was cryptic about "trying to do the right thing" and providing "balance" to L.A.'s review. Scott told appellant to "take a fine tooth comb through it and get it back to me. Seth and I will look it over, vet it through legal and give you the go-ahead to deliver." No other employee's performance evaluation in appellant's department was subjected to such scrutiny, and in fact, no other evaluation was reviewed by HR or the legal department.

On April 11, 2007, after HR had given appellant its comments, appellant formally reviewed L.A.'s performance with her. Appellant then summarized the meeting to Scott and stated that she was committed to placing L.A. on a formal PIP. Appellant told Scott that she believed the "treatment" L.A. was receiving was unfair and discriminatory to L.A. and to other employees, because no other employee was being treated this way. Again, appellant was told not to tell L.A. that HR and the legal department were so deeply involved in her review process.

On April 16, 2007, appellant met with Scott to initiate her plan of action for L.A. Appellant told Scott that it was time for L.A. to know her specific performance issues, the expectations for her job, and to develop a reasonable plan for success. Appellant also reviewed the plan with her supervisor, Brad Frank, and informed him and Scott that she would meet with L.A. on April 23 to discuss the performance issues. Appellant again told Scott and Frank that she believed that the treatment of L.A. was discriminatory and unfair to L.A. and to other people in the department.

The following day, at a meeting with Frank, appellant was confronted with reports that her staff had given her a poor performance evaluation, and Frank further reviewed her performance. Surprised at this turn of events, appellant concluded that the negative comments about her work came from individuals who saw that appellant appeared to be permitting L.A. to perform poorly without addressing the issues that affected the performance level of the entire team. Appellant also knew that L.A. was frustrated and had been sharing her frustrations with her colleagues.

In the course of these contacts between the parties, appellant again complained that the process she was made to implement for L.A. was not "equitable" and that HR ought to examine the issues created with other employees when HR failed to treat L.A. in the same manner as other employees. Appellant told Frank that the situation with L.A. placed her in an ethically compromised situation and she would no longer treat L.A. differently than other members of the team because of L.A.'s race. Appellant told Frank that when HR was ready to address the situation in a fair and productive manner, she would actively participate in managing L.A.'s performance issues.

In June, Frank told appellant that he did not believe that she could remedy the situation on her team to suit him and terminated appellant's employment. This followed appellant's further report of her frustration with the situation and her statement that she refused to engage in what she believed to be discriminatory treatment of L.A. A preceding review of her performance included consistently high rankings from her director and her peers. During this review process, appellant accepted the instructions of HR and attempted to locate recommended resources to improve her work. She believed that she had not been given reason to believe that her employment was in jeopardy.

As a result of the termination of her employment, appellant brought a claim of

reprisal discrimination under the MHRA, Minn.Stat. §§ 363A.01 to 363A.41 (2008). Appellant alleged that respondent engaged in unlawful employment practices, including denying employment opportunities and engaging in retaliatory conduct because of appellant's good-faith reports of discriminatory treatment and refusals to participate in discriminatory employment practices. The district court granted respondent's motion to dismiss appellant's complaint for failure to state a claim on which relief could be granted.

## ISSUE

Did the district court err in dismissing appellant's complaint for failure to state an actionable claim?

## ANALYSIS

### 1.

The MHRA prohibits an employer from discriminating on the basis of race with respect to the terms, conditions, or privileges of employment. Minn.Stat. § 363A.08, subd. 2(3). The MHRA also prohibits an employer who participated in the alleged discrimination from engaging in any reprisal against any person because that person opposed a practice forbidden under the MHRA. Minn.Stat. § 363A.15(1).

■ To establish a prima facie case for a reprisal claim under the MHRA, a plaintiff must establish: (1) statutorily protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn.1983). Only the first requirement is at issue on this appeal.

■ Appellant argues that to satisfy the first prong of a reprisal claim, the MHRA requires that a plaintiff need allege only that she had a good-faith, reasonable belief that the employment practice that she opposed was discriminatory.[1] Respondent counters that a plaintiff claiming reprisal under the MHRA must show that the employment practice she opposed was actually discriminatory. We review issues of statutory interpretation de novo. *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 803 (Minn.2004).

The MHRA was enacted in 1955 with the purpose of securing freedom from discrimination in employment because "[s]uch discrimination threatens the rights and privileges of the inhabitants of [Minnesota] and menaces the institutions and foundations of democracy." 1955 Minn. Laws ch. 516, § 1, at 803. It is also the policy of the MHRA "to protect all persons from wholly unfounded charges of discrimination." *Id.* The legislature requires that the provisions of the MHRA "be construed liberally" for the accomplishment of the anti-discrimination purposes thereof. Minn. Stat. § 363A.04.

■ Respondent argues that this court should not look to federal cases for guidance. But because the MHRA reprisal statute mirrors the retaliation provision of Title VII,[2] Minnesota courts look to

---

1. The commissioner for the Minnesota Department of Human Rights (MDHR) filed an amicus brief in support of this position.

2. The act's prohibition on reprisal provides that it is an "unfair discriminatory practice for any individual who participated in the alleged discrimination ... to intentionally engage in any reprisal against any person be-

cause that person ... [o]pposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." Minn.Stat. § 363A.15.

The anti-retaliation provision of Title VII states that it "shall be an unlawful employment practice for an employer to discriminate

federal caselaw in deciding issues of employment retaliation claims brought under Title VII of the Civil Rights Act of 1964. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999); *Wenigar v. Johnson*, 712 N.W.2d 190, 205 (Minn.App. 2006) ("To help us determine if a cause of action exists under the MHRA, it is appropriate to call on the interpretations of the federal anti-discrimination statutes when the provisions of the federal statute and the MHRA are similar."). Like the MHRA, the elimination of discrimination in employment is the purpose behind Title VII, and Title VII is liberally interpreted to effectuate that purpose. *Hearth v. Metro. Transit Comm'n*, 436 F.Supp. 685, 689 (D.Minn.1977). We therefore examine the federal courts' treatment of this issue.

In addressing retaliation claims under Title VII, the federal courts require only that a plaintiff allege a good-faith, reasonable belief of discrimination; not proof of actual discrimination. The Eighth Circuit has consistently held that "as long as a plaintiff had a reasonable, good-faith belief that there were grounds for a claim of discrimination or harassment, the success or failure of a retaliation claim is analytically divorced from the merits of the underlying discrimination or harassment claim." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1118 (8th Cir.2006) (citing *Foster v. Time Warner Entm't Co.*, 250 F.3d 1189, 1195 (8th Cir.2001) (stating that a retaliation plaintiff need not establish the conduct that she opposed was in fact discriminatory but rather must demonstrate a good-faith, reasonable belief that the underlying conduct violated the law); *Buettner v. Arch Coal Sales, Co.*, 216 F.3d 707, 714 (8th Cir.2000) ("A finding of unlawful retaliation ... is not conditioned on the merits of the underlying discrimination complaint.")). The Eighth Circuit reasons that the retaliation provision of Title VII is focused not upon whether the underlying conduct alleged by the employee is "prohibited discrimination, but instead examines an employer's actions taken to punish an employee who makes a claim of discrimination." *Wallace*, 442 F.3d at 1118.

Likewise, courts in ten other federal circuits hold that an employee who opposes an employment practice need not establish that the opposed practice was discriminatory. Rather, these circuits hold that to state a reprisal claim, an employee must establish only a good-faith, reasonable belief that the practice violated Title VII. *See, e.g., Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir.2008); *Equal Employment Opportunity Comm'n v. Navy Fed. Credit Union*, 424 F.3d 397, 406–07 (4th Cir.2005); *Crumpacker v. Kansas Dep't of Human Res.*, 338 F.3d 1163, 1172 (10th Cir.2003); *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir.1996); *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir.1994); *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir.1994); *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 33 (1st Cir.1990); *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312–13 (6th Cir.1989); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988); *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1020 (D.C.Cir.1981).

Respondent argues that we should not adopt the good-faith, reasonable belief standard because other Minnesota anti-

---

against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a) (2006).

retaliation statutes[3] expressly impose a good-faith requirement, therefore suggesting that a reprisal plaintiff under the MHRA, which does not contain this language, is required to prove actual discrimination by the employer. But the MHRA specifically directs courts to construe the act "liberally for the accomplishment of the purposes thereof." Minn.Stat. § 363A.04. And like the MHRA, Title VII does not contain language expressly extending retaliation protection to employees who complain of discrimination in good faith, and yet federal courts hold that such employees are protected under Title VII. *See Wallace*, 442 F.3d at 1118; *Wilkerson*, 522 F.3d at 322; *Navy Fed. Credit Union*, 424 F.3d at 406; *Crumpacker*, 338 F.3d at 1171–72.

Further, both the MHRA and Title VII were enacted prior to the anti-retaliation statutes cited by respondent.[4] By 1977, federal courts were applying the good-faith standard to retaliation claims. *See Hearth*, 436 F.Supp. at 689. Therefore, the fact that later enacted anti-retaliation statutes include a good-faith requirement does not preclude the good-faith standard from applying to MHRA reprisal claims.

▉ Finally, respondent argues that there is a key difference between the language in Title VII and the MHRA because, unlike Title VII, the MHRA states that it is the "public policy of this state to protect all persons from wholly unfounded charges of discrimination." Minn.Stat. § 363A.02, subd. 1(b). Respondent contends that unless a plaintiff pleads actual discrimination by an employer, a reprisal claim is "wholly unfounded." "When a statute's meaning is plain from its language as applied to the facts of the particular case, a judicial construction is not necessary." *ILHC of Eagan, LLC v. County of Dakota*, 693 N.W.2d 412, 419 (Minn.2005). We apply the rules of grammar and consider all words and phrases in the statutory language when possible so that none is deemed superfluous. *Id.* This policy statement does not alter our conclusion that the good-faith, reasonable belief standard applies to reprisal claims under the MHRA.

First, it is not evident that Title VII, by failing to condemn "unfounded" charges, in any sense invites them. The state and federal standards are not distinguishable based on the statement of this consideration in the MHRA.

Second, the word "wholly" means "completely; entirely." *American Heritage Dictionary* 2039 (3d ed. 1992). And the word "unfounded" means "[n]ot based on fact or sound observation." *Id.* at 1950. Under these terms of the MHRA, the employee need only have a reasonable basis for the charge, even when the opposed conduct of the employer turns out not to be an actual violation of the act. The good-faith, reasonable-belief standard protects employers, requiring that the individual employee-complainant have a subjective "good-faith" belief that they were opposing an employer's discriminatory

---

**3.** *See* Minn.Stat. § 181.932, subd. 1 (2008) (prohibiting an employer from penalizing an employee for reporting a violation of law in good faith); Minn.Stat. § 626.557, subd. 17 (2008) (prohibiting retaliation against those individuals who, in good faith, report suspected maltreatment of vulnerable adults).

**4.** The MHRA was enacted in 1955. 1955 Minn. Laws ch. 516. The federal anti-retaliation provision was enacted on July 2, 1964, as part of Title VII of the Civil Rights Act of 1964. Pub. Law No. 88–352, Title VII, § 704, 78 Stat. 257 (1964). The anti-retaliation provisions cited by respondent, Minn.Stat. § 626.557 and Minn.Stat. § 181.932, were enacted in 1980 and 1987, respectively. 1980 Minn. Laws ch. 542 § 1, at 712; 1987 Minn. Laws ch. 76, § 1, at 140.

practice. *Little v. United Techs. Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997) (stating that to plead a prima facie retaliation claim, a plaintiff must "show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices").

Third, the good-faith, reasonable-belief standard requires that an employee's objection to an employer's practice be an objectively reasonable opposition to a discriminatory practice. *Montandon v. Farmland Indus., Inc.,* 116 F.3d 355, 359 (8th Cir.1997). An employee may not avoid scrutiny of a retaliation claim "merely by claiming such a belief" of a discriminatory practice, but rather, the employee must provide facts supporting the claim that her belief was objectively reasonable. *Id.* In other words, if no reasonable person could have believed that the underlying incident complained of constitutes unlawful discrimination, then the employee's objection is not protected conduct. *Wilkerson,* 522 F.3d at 322; *see also Little,* 103 F.3d at 960 (holding that in addition to the subjective good-faith requirement, a reprisal plaintiff must show that his belief that his employer was engaged in unlawful practices was objectively reasonable in light of the facts and record presented).

 These considerations compel our conclusion that the federal good-faith, reasonable-belief standard is consistent with Minnesota's public policy and that this standard possesses sufficient safeguards to protect employers from wholly unfounded lawsuits, while still enabling employees to voice their concerns about discrimination. *See Trent,* 41 F.3d at 526–27 (recognizing that requiring proof of actual discrimination would chill legitimate assertions of employee rights and "tend to force employees to file formal charges rather than seek conciliation or informal adjustment of grievances") (quotation omitted). In con-

sidering the MHRA's public policy, and both Minnesota and federal cases, we hold that the first "statutorily protected conduct" prong of an MHRA reprisal claim is satisfied when a plaintiff alleges facts supporting a good-faith, reasonable belief that the conduct opposed constituted a violation of the MHRA.

### 2.

In dismissing appellant's complaint, the district court found that appellant failed to plead facts establishing that the practice she opposed was actually discriminatory. Appellant argues that her complaint sets forth a legally sufficient claim for relief under the good-cause, reasonable-belief standard.

 An appellate court reviews de novo a dismissal on the pleadings under Minn. R. Civ. P. 12.02(e). *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003). In considering an appeal from a rule 12.02(e) dismissal for failure to state a claim, we "must consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Id.* The only question before us on appeal is whether the complaint sets forth a legally sufficient claim for relief. *Elzie v. Comm'r of Pub. Safety,* 298 N.W.2d 29, 32 (Minn.1980).

 "[A] pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist that would support granting the relief demanded." *N. States Power Co. v. Franklin,* 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963) (footnote omitted). This being said, we are mindful that the United States Supreme Court has recently corrected this standard insofar as it suggests that the future introduction of evidence can substitute for an adequate

statement of facts in the complaint; the statement of entitlement to relief must go beyond "labels and conclusions" or the "speculative" presentation of a claim. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–57, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see Hebert v. City of Fifty Lakes,* 744 N.W.2d 226, 235 (Minn.2008) (citing *Twombly* for its demand of more than "labels and conclusions").[5] The court demands that the complaint state "enough factual matter" or "factual enhancement" to suggest, short of "probability," "plausible grounds" for a claim—a pleading with "enough heft" to show entitlement. *Twombly,* 550 U.S. at 556–57, 127 S.Ct. at 1965–66.

 Appellant alleged that on at least four occasions prior to her termination, she complained to HR and her supervisor that she believed that their refusal to implement a PIP to assist L.A. in improving her job performance constituted race-based discrimination. The pleadings also show that appellant specifically complained to her supervisor that she thought the process that respondent required her to implement for L.A. was not "equitable" when respondent "failed to treat [L.A.] in the same manner as other employees."

Appellant's complaint further stated that respondent was reluctant and ultimately refused to allow her to implement a PIP to improve L.A.'s job performance, even though HR did not resist placing PIPs on other employees in the past; and that HR commented to appellant about L.A.'s "racially-based history" with respondent's organization and respondent expressed concern about a race discrimination suit against it if appellant placed a PIP on L.A.[6] The complaint sets forth objectively reasonable grounds upon which to base appellant's subjective belief that respondent was treating L.A. differently on the basis of race in violation of the MHRA. Minn.Stat. § 363A.08, subd. 2(3) (prohibiting an employer from discriminating against a person with respect to the terms and conditions of employment on the basis of race).

Respondent questions appellant's allegation that L.A. was treated unfairly, pointing out that not every instance of differential treatment is illegal. Focusing on the allegation that respondent engaged in illegal discrimination by refusing to implement a PIP with L.A., respondent asserts that this claim was unreasonable as a matter of law, requiring the district court's dismissal.[7] At least one federal circuit has held to the contrary.

In *Vaughn v. Edel,* the Fifth Circuit held that an African–American employee presented direct evidence of discrimination where her employer initiated a non-confrontation policy for the employee in order to avoid a race discrimination suit. 918 F.2d 517, 521–22 (5th Cir.1990). The Fifth

---

**5.** The U.S. Supreme Court concludes that a prior line of authority that dwells on what "the plaintiff can prove," without regard to what is pleaded, "has earned its retirement." *Twombly,* 550 U.S. at 561–63, 127 S.Ct. at 1968–69. The court explains its current awareness of a need to balance caution before dismissal with cognizance of the immense expense of discovery in some litigation and the accompanying motivation to settle "even anemic cases." *Id.* at 558–59, 127 S.Ct. at 1966–67.

**6.** Appellant also alleges that she was required by respondent to submit L.A.'s performance evaluation to HR and the legal department before appellant could review it with L.A. when HR did not ask to review any other employees' performance evaluations. We decline to recognize the prospect that an employer creates a risk of liability by its choice to consult with counsel.

**7.** The district court found appellant's assertion to be "clearly unreasonable as a matter of law."

Circuit found that by failing to critique or counsel the employee on how to improve her work, the employee was treated differently than other employees because of her race. *Id.* at 522. Therefore, the court held that this differential, non-confrontational treatment was discriminatory. *Id.*

> As a result, Texaco did not afford Vaughn the same opportunity to improve her performance, and perhaps her relative ranking as it did its white employees.
>
> . . . .
>
> ... We have no doubt that, in not criticizing or counseling Vaughn, self-interest rather than racial hostility motivated Texaco. Nevertheless, we agree with the magistrate that Texaco ignored its own procedures for a racial reason, however benign that reason may initially appear to be.

*Id.* at 522–23.

Although the discrimination discussed in *Vaughn* was asserted as to the complainant herself, who also suffered other disciplinary action, the case offers support for a finding that an employer's hands-off approach may be discriminatory. *Id.* Looking solely at the allegations in appellant's complaint, appellant adequately states a reasonable belief that respondent's directive to "move slowly" with L.A. and not implement a PIP with L.A. denied L.A., on the basis of race, the same opportunity to improve her job performance.

The Tenth Circuit case of *Crumpacker* is also instructive because the court clarified the rationale for extending protection from reprisal to employees who oppose employment actions under the belief that the action is discriminatory, even if it turns out that the employee was wrong. 338 F.3d at 1172. The court explained that the "determination of what constitutes prohibited conduct under Title VII continually evolves as courts continue to struggle with the question of the types of workplace discrimination and harassment which are prohibited by Title VII." *Id.* (quotation omitted). A holding that appellant's complaint fails to state a reasonable basis for her belief creates a risk of undercutting the MHRA's anti-retaliation purpose of protecting an employee who challenges an employer's conduct that they reasonably believe is illegal discrimination.

Respondent argues that appellant's complaint is speculative, noting especially that it is difficult to discern whether appellant is claiming a belief that L.A. was being discriminated against, or alternatively, that other employees of respondent were being discriminated against because of the differential treatment of L.A. At least twice in the complaint, appellant states that the treatment of L.A. was unfair to other employees. And these and other allegations could be read to imply a concern for the withholding of discipline; several allegations suggest that appellant was simply aggrieved because respondent was not acting on L.A.'s poor performance, for example, that L.A. was collecting a salary "to not do her job."

The language of the complaint raises other questions. Did respondent have reason to believe that appellant's prospective PIP for L.A. would actually be beneficial? Or does respondent spare an employee disciplinary steps by withholding a PIP? Could appellant reasonably conclude that the withholding of a PIP, without other losses, was singularly harmful?

Despite questions invited by the language of the complaint, the document contains assertion of specific facts that demonstrate a right to proceed under the reprisal statute. Appellant's allegations adequately state the theory that she was frustrated because she had reason to believe that respondent's "treatment" of L.A. "was un-

fair and discriminatory to [L.A.]." Appellant's complaint states that she objected to what she believed was inequitable treatment of L.A. and raised her concerns that respondent "failed to treat [L.A.] in the same manner as other employees." It cannot be said on a mere review of the complaint that appellant's stated cause is something other than a grievance arising out of a reasonable belief that respondent discriminated against L.A. on the basis of her race.

Other language in the complaint suggests disputes that could arise from appellant's further efforts to provide evidence that bears out her claim of a reasonable, good-faith belief of discrimination. But her complaint is sufficient; the language of the complaint contains adequate assertions of fact to properly state a cause of action. The pleadings satisfy the requirement for a short and plain statement of the claim that shows appellant's entitlement to relief. Minn. R. Civ. P. 8.01. Further satisfying the rule, the complaint states in detail the relief that appellant demands in a judgment; she demands the declaration of a violation, a permanent injunction, restitution for back pay, and compensatory damages and attorney fees.

In sum, appellant has alleged sufficient facts to show that she engaged in statutorily protected conduct to satisfy the first prong of a prima facie reprisal claim when she repeatedly objected to what she perceived as discriminatory treatment of L.A. *See Bahri v. Home Depot USA, Inc.,* 242 F.Supp.2d 922, 956 (D.Or.2002) (refusing to grant summary judgment on ground that plaintiffs' complaints were not protected activity when generalized complaints about harassment and discrimination, viewed in the context of specific activities complained of, had a gender component). As initially stated, respondent does not dispute that the complaint adequately alleges other prongs of a proper claim.

## DECISION

Under the good-faith, reasonable-belief standard, appellant's complaint sets forth a legally sufficient claim that respondent was engaged in discrimination in violation of the MHRA. The district court erred in granting respondent's motion for dismissal pursuant to Minn. R. Civ. P. 12.02(e).

**Reversed.**