

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-9-2008

# Wilkerson v. New Media Tech

Precedential or Non-Precedential: Precedential

Docket No. 07-1305

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Wilkerson v. New Media Tech" (2008). *2008 Decisions.* Paper 1297.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1297

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-1305

———

JESSICA WILKERSON,
                              Appellant
                   v.

NEW MEDIA TECHNOLOGY CHARTER SCHOOL INC.
T/D/B/A NEW MEDIA TECHNOLOGY
CHARTER SCHOOL; HUGH C. CLARK

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 06-cv-02567)
District Judge: Honorable Stewart Dalzell

———

Argued February 11, 2008

Before: SLOVITER, SMITH, and STAPLETON, Circuit Judges

(Filed: April 9, 2008)

____

Timothy M. Kolman
Wayne A. Ely  (Argued)
Timothy M. Kolman & Associates
Langhorne, PA l9047

    Attorneys for Appellant

Debbie R. Sandler  (Argued)
White & Williams
Philadelphia, PA 19103

      Attorney for Appellees

_____

OPINION OF THE COURT

_____

SLOVITER, <u>Circuit Judge</u>.

      The statement of facts set forth here is based on the allegations of the complaint as the District Court dismissed the complaint before any responsive pleading or discovery.

## I.

      New Media Technology Charter School, Inc. ("New Media") employed Jessica Wilkerson by letter dated March 4, 2005, "as an 'advisor' (essentially a teacher) during the spring 2005 school year." App. at 65. When she applied for the position, Wilkerson disclosed to New Media her "Christian ministry activities," and New Media was aware of her "Christian faith." App. at 65.

      In May 2005, Wilkerson was required to attend a school banquet at which there was a ceremony, described in the complaint as "libations."[1] App. at 65. The ceremony violated Wilkerson's Christian beliefs because it required those who participated "to engage in what [Wilkerson] perceived as

_____

[1] Neither party discusses or describes what a "libations" ceremony is. The District Court also noted that the parties did not explain the term, and the Court defined the term "libation," according to the Oxford English Dictionary, as "[t]he pouring out of wine or other liquid in honour of a god" or "[l]iquid poured out to be drunk." App. at 5 (quoting 8 Oxford English Dictionary 880 (2d ed. 1989)).

2

religious worship of their ancestors rather than the Christian God." App. at 65. Wilkerson was present during the libations ceremony, but chose not to participate. She does not allege that she complained to anyone at New Media about the ceremony while it was happening, nor does she allege that anyone at New Media made any comment to her at the time or at any time after the ceremony about her decision not to participate.

Wilkerson did not know that the libations ceremony would be conducted at the banquet prior to attending the banquet. Thus, Wilkerson does not allege that she objected to the libations ceremony prior to attending; however, she also does not allege that she objected to the libations ceremony at the time it occurred, asked to be excused, or indeed even attempted to excuse herself. Nevertheless, Wilkerson alleges that defendants New Media and Director Hugh Clark "were aware" that the libations ceremony "would offend the religious beliefs of [Wilkerson] and other members of the Christian faith and made no goo[d] faith effort to accommodate the religious beliefs of [those individuals]." App. at 65.

During a staff meeting that occurred at some point shortly after the libations ceremony, Wilkerson complained to agents of New Media about the libations ceremony "and made religious objections to it . . . ." App. at 66. Following that complaint, Wilkerson alleges that "New Media made no effort to accommodate her religious beliefs or to engage in an interactive process to accommodate them." App. at 66.

Wilkerson alleges that in June 2005, her employment was "terminated as a result of her Christian religious beliefs, her refusal to engage in the 'libations' ceremony, and her complaints related to the ceremony . . . ." App. at 66. Clark prepared and signed Wilkerson's termination letter. The termination letter stated no performance-based reason for the termination.

Wilkerson filed suit against New Media and Clark alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and other federal and state law. The defendants filed a motion to dismiss, which the District Court

3

granted. Although the District Court dismissed the first amended complaint in its entirety, on appeal Wilkerson argues that the District Court should not have dismissed Counts One, Two, Five and Six of her amended complaint, and we will confine ourselves to that contention. Wilkerson argues that she has adequately pled claims under Title VII and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann. § 951 et seq. ("PHRA").

## II.

We have plenary review of the dismissal of a complaint. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## III.

Both parties agree that the PHRA and Title VII claims should be analyzed under the same legal standard, and we do so here. See Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002). Wilkerson asserts three claims: (1) religious discrimination under Title VII and the PHRA, (2) retaliation under the PHRA and Title VII, and (3) an individual PHRA claim against Clark for aiding and abetting the PHRA violations. With respect to the religious discrimination claims, Wilkerson alleges two theories of discrimination – failure to accommodate and discriminatory termination.

Under Title VII, it is unlawful for an employer to "discharge . . . or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions or privileges of employment, because of . . . religion." Shelton v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 224 n.4 (3d Cir. 2000) (quoting 42 U.S.C. § 2000e-2(a)(1)). In addition, under 42 U.S.C. § 2000e(j), an employer must make reasonable accommodations for its employees' religious beliefs and practices unless doing so would create an "undue hardship" for the employer. Id. at 224.

4

To establish a prima facie case of a failure to accommodate claim, the employee must show: (1) she has a sincere religious belief that conflicts with a job requirement; (2) she told the employer about the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement. Id. The employee must give the employer "fair warning" that a particular employment practice will interfere with that employee's religious beliefs. Reed v. Great Lakes Cos., 330 F.3d 931, 935 (7th Cir. 2003) (collecting cases). That is because "[a] person's religion is not like [her] sex or race[,]" that is, simply announcing one's belief in a certain religion, or even wearing a symbol of that religion (i.e., a cross or Star of David) does not notify the employer of the particular beliefs and observances that the employee holds in connection with her religious affiliation. Id. at 935-36. We do not charge employers with possessing knowledge about the particularized beliefs and observances of various religious sects. Id. at 936. Our precedents in this area have involved instances in which the employee claiming discrimination had informed the employer of a particularized religious belief in conflict with an employment requirement. See, e.g., Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 268 (3d Cir. 2001) (discussing Orthodox Jewish professor's warning to supervisor that she would not be able to teach on Jewish holidays).

The District Court correctly dismissed those portions of Wilkerson's claims alleging failure to accommodate. Wilkerson does not allege that she ever informed New Media or its agents that the libations ceremony conflicted with her religious beliefs prior to or during the ceremony. Because she did not inform New Media that the ceremony presented a conflict, it did not have a duty to accommodate her. Although Wilkerson told New Media after the fact, at that time there was nothing to accommodate. That Wilkerson alleges that she told New Media that she was a Christian and that New Media knew she was a Christian does not sufficiently satisfy Wilkerson's duty to provide "fair warning" to New Media that she possessed a religious belief that specifically prevented her from participating in the libations ceremony.

5

Wilkerson seeks to be permitted to adduce discovery that would show that New Media knew or should have known that the libations ceremony would offend Christians generally. Such discovery, even if obtainable, is not relevant because we do not impute to the employer the duty to possess knowledge of particularized beliefs of religious sects. Even if there was evidence that New Media suspected that the libations ceremony would offend Wilkerson and other Christians, it is undisputed that Wilkerson did not inform the defendants that the libation ceremony would offend her religious beliefs, and therefore they did not have a duty to accommodate her. We will therefore affirm the District Court's dismissal of Count One and Count Five of the complaint to the extent those counts allege failure to accommodate under Title VII and the PHRA respectively.

**IV.**

We turn to Wilkerson's claim alleging that New Media terminated her employment because of her refusal to participate in the libations ceremony, and because of her complaint thereof. In both her complaint and in her appellate brief Wilkerson characterizes her claim as "retaliation against [her] as a result of her protected activity in complaining of religious discrimination." App. at 67.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in a protected activity under Title VII; (2) the employer took an adverse action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted).

The District Court, correctly characterizing New Media's arrangement with Wilkerson as an "at-will employment agreement," App. at 14, held that Wilkerson was not "terminated" because the agreement on its face provided for her

6

paid work only until June 17, 2005.[2]  Thus, according to the District Court, New Media did not terminate Wilkerson; it "simply did not renew her contract."  App. at 11.  The Court also noted that Wilkerson did not allege that New Media agreed to renew her employment beyond the June 17, 2005 date, nor did she "offer any explanation that might reconcile her claim of termination in June of 2005 with an agreement providing for her paid work only until June 17, 2005."  App. at 12.

It is irrelevant whether the letter dated March 4, 2005 from New Media to Wilkerson, which was titled as "Employment Letter Agreement," App. at 58, is an employment contract or whether it merely sets the amount of compensation for a particular period of time, as Wilkerson argues.  Inherent in the District Court's decision is its view that the proscription of discrimination does not apply to an at-will employment arrangement or an employment agreement with a fixed termination date.  That is an erroneous view of the law.  The failure to renew an employment arrangement, whether at-will or for a limited period of time, is an employment action, and an employer violates Title VII if it takes an adverse employment action for a reason prohibited by Title VII, such as religious discrimination.

In prior employment discrimination/retaliation cases we have made clear that failure to rehire can constitute an adverse employment action.  Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003).  See also Grausam v. Murphey, 448 F.2d 197, 206 (3d Cir. 1971) (stating that failure to renew an employment contract was permissible "absent a discriminatory severance") (emphasis added).  In Suppan v. Dadonna, 203 F.3d

---

[2] In considering the "employment agreement," the District Court relied on In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that a court may consider a document outside the pleadings if it is "integral to or explicitly relied upon in the complaint") (citation and alteration omitted).  Wilkerson did not challenge New Media's representations that the agreement was integral to her complaint.

7

228, 234 (3d Cir. 2000), a case involving a claim of First Amendment retaliation brought under 28 U.S.C. § 1983,[3] we recognized that failure to rehire, promote, or transfer could constitute First Amendment retaliation, even though the employee has no legal entitlement to be rehired, promoted or transferred. We relied upon Rutan v. Republican Party, 497 U.S. 62, 75 (1990), in which the Supreme Court held that "promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." In Rutan, "the Court rejected the argument that the First Amendment rights of the public employees had 'not been infringed because they [had] no entitlement to promotion, transfer, or rehire.'" Suppan, 203 F.3d at 234 (quoting Rutan, 497 U.S. at 72).

We also recognized that in Perry v. Sindermann, 408 U.S. 593 (1972), the Supreme Court had held that a "teacher's lack of contractual or tenure rights to reemployment is immaterial to his First Amendment claim." Suppan, 203 F.3d at 234. The same rationale is applicable under Title VII, even when the employment is at-will. See Whiting v. Jackson State Univ., 616 F.2d 116, 123 n.6 (5th Cir. 1980) (noting that the failure to renew an employment contract constitutes discharge for purposes of Title VII).

In its opinion dismissing the complaint, the District Court noted that Wilkerson's allegations were not sufficiently "particularized." App. at 17. The Court referred in particular to Count Four (the "conspiracy" count), which is not before us on appeal, but we are obliged to review the pleading of the complaint in light of the Supreme Court's decision in Bell Atl. Corp. v. Twombly, - - - U.S. - - - -, 127 S. Ct. 1955 (3d Cir. 2007), and this court's more recent opinion in Phillips v. County of Allegheny, - - - F.3d - - - -, 2008 WL 305025 (3d Cir. Feb. 5,

---

[3] Although by no means identical, for these purposes we can reasonably view as comparable discrimination claims brought under § 1983 and Title VII. See Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir. 1997).

8

2008), both of which were issued after the District Court's decision in this case. In Twombly, which arose in the antitrust context, the Supreme Court rejected the oft-repeated language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The allegations of the complaint, according to the Court, should "plausibly suggest[ ]" that the pleader is entitled to relief. Twombly, 127 S. Ct. at 1966. Thereafter, in Phillips, an action under 42 U.S.C. § 1983, this court held that Twombly's "plausibility" paradigm for evaluating the sufficiency of complaints is not restricted to the antitrust context. 2008 WL 305025, at *6. Although we noted that the exact parameters of the Twombly decision are not yet known, we read Twombly to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (quoting Twombly, 127 S. Ct at 1965). In other words, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Id. (quoting Twombly, 127 S. Ct. at 1965). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Id. (quoting Twombly, 127 S. Ct. at 1965). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the pleader not only to provide a "short and plain statement," but also a statement "showing that the pleader is entitled to relief." Id. at *7.

Today, we extend our holding in Phillips to the employment discrimination context. The plausibility paradigm announced in Twombly applies with equal force to analyzing the adequacy of claims of employment discrimination.

Wilkerson's amended complaint alleges that her employment was terminated due to her "Christian religious beliefs," "her refusal to engage in the 'libations' ceremony," and her "complaints related to the ceremony." App. at 66. Although those allegations might be insufficient to give defendants the required notice of what the libations ceremony is or why it is religious in nature, Wilkerson also pled that "[t]he 'libations' ceremony violated [her] Christian beliefs as it required

9

participants to engage in what [she] perceived as religious worship of their ancestors rather than the Christian God." App. at 65. In ruling on a motion to dismiss, the court is not free to question whether there was in fact ancestor worship at a public school banquet in a school that ostensibly focuses on digital multimedia and project based learning, see About Us, New Media Technology Charter School, http://www.newmediatech.net/flashSite/about.php (last visited Feb. 12, 2008). Wilkerson's complaints following the ceremony were based on her religious beliefs, and therefore, as we noted earlier, could be read to allege that her termination was based on her religious beliefs, a violation of Title VII.

It appears that Wilkerson's retaliation claim is based on her complaints that she was required to attend the banquet at which there was allegedly ancestor worship in violation of her Christian beliefs. Protected activity under Title VII includes opposition to unlawful discrimination under Title VII. Moore, 461 F .3d at 340. The employee must have an "objectively reasonable" belief that the activity s/he opposes constitutes unlawful discrimination under Title VII. Id. To put it differently, if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected. Our concurring colleague believes that Wilkerson cannot have an objectively reasonable belief that New Media committed an unlawful employment practice. Although we have held above that Wilkerson's failure to accommodate theory fails as a matter of law because she never requested an accommodation, her retaliation claim is not necessarily foreclosed. The difficulty in ruling on Wilkerson's allegations is that they blend into each other. Frankly, we are skeptical as to the reasonableness of Wilkerson's belief that New Media committed an unlawful practice, but because we have only her complaint before us we are not prepared to hold at this preliminary stage that it is implausible that Wilkerson has a good faith belief that it did. Details of the nature of the libations ceremony and the decision not to renew Wilkerson's employment could be more readily forthcoming in discovery. We leave to the discretion of the District Court on remand the nature of the discovery, confident

10

that the experienced district judge will take into consideration the concerns about the cost of discovery to a small charter school, such as the defendant, and will cabin discovery accordingly.

## V.

Finally, we turn to Count VI of the complaint in which Wilkerson alleged an aiding and abetting claim against Clark under the PHRA. The PHRA makes it unlawful "[f]or any person, employer, . . . or employe[e], to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . ." 43 Pa. Cons. Stat. Ann. § 955(e). Wilkerson alleges that Clark violated that section by failing to accommodate her religious beliefs and by signing her termination letter because she objected to the libations ceremony. For the reasons discussed above, the District Court correctly dismissed the failure to accommodate claim against Clark. However, for the same reasons discussed above, the District Court erred in dismissing the termination claim because its decision rested on its incorrect assumption that Wilkerson, an at-will employee, could not have been "terminated" in violation of the applicable statute.

## VI.

For the reasons set forth above, we will affirm the judgment of the District Court dismissing all claims under Title VII and the PHRA based upon the failure to accommodate theory. We will reverse the judgment dismissing the religious discrimination and retaliation claims under Title VII and the PHRA based upon the adverse employment action/retaliation theory, as well as the individual claim against Clark alleging that he terminated Wilkerson based upon her religious belief. We will remand for further proceedings consistent with this opinion.

11

STAPLETON, J., *concurring and dissenting*:

I agree with the Court's analysis and disposition of Wilkerson's failure to accommodate claim. Moreover, I, too, would reverse and remand for further proceedings on her Title VII discriminatory termination claim and the associated aiding and abetting claim. I write to explain why I would affirm, rather than reverse, the dismissal of Wilkerson's retaliation claim.

Section 2000e-2(a) of Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's . . . religion." I agree that, under our pleading rules as interpreted by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), Wilkerson has sufficiently pled a cause of action under this section.

Section 2000e-3(a) of Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII] or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." As the Court acknowledges, in order to state a cause of action for unlawful retaliation under this independent statutory provision, one must allege that one has engaged in activity protected by Title VII and that such activity has resulted in an adverse employment action. *Moore v. City of*

*Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006).

The adverse employment action of which Wilkerson complains is the termination of her employment which she attributes to "her Christian religious beliefs, her refusal to engage in the 'libations' ceremony, and her complaints related to the ceremony." As I have indicated, I agree that the allegations of the complaint tending to show a causal connection between her termination and "her Christian religious beliefs" and "her refusal to engage in the libation ceremony" suffice to state a discriminatory termination claim under Title VII. The allegations tending to show a connection between her termination and "her complaints related to the ceremony," however, do not state a retaliatory discharge claim. Wilkerson does not allege that her employment was terminated because she engaged in activity made an unlawful employment practice by Title VII. Her complaints were not about an employment practice of New Media but rather about its having conducted a libation ceremony as a part of its curriculum. Wilkerson explains in her complaint that she complained because she "did not believe that it was appropriate for a publicly-funded school to engage in religious worship such as the 'libation' ceremony." App. at 66a. This may be a tenable position to take under the Establishment of Religion clause, but her complaints were not about an employment practice made unlawful by Title VII.

While it is not altogether clear to me, the Court's opinion seems to suggest that it understands Wilkerson to be alleging that her employment was terminated in retaliation for her having complained about New Media's failure to accommodate her religious beliefs. Failure to accommodate the religious beliefs of an employee is, of course, made an unlawful employment

13

practice by Title VII. This does not help Wilkerson, however. As the Court has explained, given the facts alleged, New Media did not commit an unlawful employment practice by failing to accommodate Wilkerson's religious beliefs. Wilkerson "did not inform New Media that the ceremony presented a conflict" and while she shared that information "after the fact, at that time there was nothing to accommodate." Maj. Op. at 6. Moreover, while it is true that the retaliation provisions of Title VII protect an employee who complains about employer conduct he or she reasonably believes to be an unlawful employment practice whether or not it is such, that rule applies only when the employee's belief is "objectively reasonable." *Moore*, 461 F.3d at 340-41. An employee who does not ask for an accommodation at the only time there is something to accommodate cannot have an objectively reasonable belief that her employer committed an unlawful employment practice by failing to address her concerns.

I would reverse the judgment of the District Court with respect to Wilkerson's discriminatory termination and associated aiding and abetting claims and remand them for further proceedings consistent with this opinion. In all other respects, I would affirm the judgment of the District Court.

14