

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-4-2009

# Della Ferra v. Postmaster General

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3817

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Della Ferra v. Postmaster General" (2009). *2009 Decisions*. Paper 1407.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1407

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3817
_____

JOSEPH DELLA FERRA,

Appellant

vs.

JOHN E. POTTER, Postmaster General

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 05-cv-05734)
District Judge: Honorable William J. Martini

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 1, 2009
Before: SCIRICA, Chief Judge, CHAGARES and WEIS, Circuit Judges
(Opinion filed: May 4, 2009)
_____

OPINION
_____

PER CURIAM.

Joseph Della Ferra, proceeding pro se, appeals from the District Court's

entry of summary judgment in favor of Appellant. For the reasons that follow, we will

affirm.

1

As we write primarily for the parties, who are already familiar with the facts of the case, we will only briefly recite them here. Appellant, a white male, was employed as a United States Postal Service letter carrier from 1981 until 2004. From 1985 until 2004, he delivered mail on the same route in Belleville, New Jersey. On January 21, 2004, he was terminated from his position. The reason given by the Postal Service for Appellant's termination was primarily his repeated failure to complete both his office and street responsibilities within an eight-hour period. At that time, he was 46 years old.

During the four years leading up to his termination, Appellant filed a number of grievances through his union, as well as several complaints with the Equal Employment Opportunity Commission ("EEOC").[1] On November 14, 2001, he was issued a Notice of Removal, based in part of his failure to complete his route within the allotted time. He filed a grievance, which was resolved in a Step B decision issued by a dispute resolution team on December 26, 2001 and signed by representatives of management and the union. This decision, which is referred to by the parties as the "Last Chance Agreement", provided that, in light of Appellant's twenty years of service with the Postal Service, his removal would be held in abeyance for two years to give him "a last opportunity to correct his conduct and behavior" and that "[a]ny further failure to follow instructions and postal regulations/rules will give cause to activate a removal

---

[1] According to Appellant's Statement of Material Facts, he filed four EEOC complaints alleging discrimination and retaliation: October 3, 2000, May 29, 2001, January 7, 2002, and August 3, 2003.

action." (Supplemental App. 80.)

On February 20, 2003, Appellant was issued a Notice of Removal, which alleged in part that he had violated the Last Chance Agreement. Appellant filed a grievance, and an arbitration hearing was held on October 1, 2003. On January 21, 2004, an independent arbitrator ruled in favor of the Postal Service, causing the termination notice to be effective that day. Specifically, the arbitrator concluded that Appellant had violated the Last Chance Agreement by his chronic failure to perform his duties, despite multiple opportunities, retraining and progressive discipline. (Supplemental App. 83-97.) Appellant's route was taken over by a 48-year-old African-American female.

On August 3, 2003, Appellant filed an EEOC complaint which alleged that he had been discriminated against on the basis of his race, sex and age. Following a hearing, an administrative law judge concluded that the Postal Service did not discriminate or retaliate against Appellant and, on July 25, 2005, entered judgment in favor of the Postal Service. Appellant then filed suit in the United States District Court for the District of New Jersey, alleging that Appellee discriminated against him in violation of Title VII of the Civil Rights Act of 1964. Specifically, he alleged that: (I) he was deprived of certain overtime opportunities; (ii) he was discriminated against on the basis of his race, sex, and age; and (iii) he was repeatedly disciplined and ultimately terminated in retaliation for his EEOC activity. After the complaint was filed, Appellant retained counsel to represent him during the course of discovery and summary judgment

3

proceedings. In an opinion dated August 14, 2008, the District Court entered summary judgment in favor of Appellee. Appellant timely filed a notice of appeal.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's entry of summary judgment, viewing the underlying facts and all reasonable inferences therefrom in the light most favorable to Appellant, the non-moving party. See Norfolk Southern Ry. v. Basell USA Inc., 512 F.3d 86, 91 (3d Cir. 2008). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The District Court found that Appellant had essentially abandoned his race, sex and age disparate treatment claims in his summary judgment brief, and that even if he had not, Appellant's filings, construed in the light most favorable to him, failed to reveal a prima facie case of discrimination based on Appellant's race, sex or age. Accordingly, the District Court granted Appellee's motion for summary judgment on these claims. We agree with the District Court's disposition of these claims, as there is nothing in the record to indicate directly or to give rise to an inference that Appellant was denied overtime opportunities or terminated from his employment based on his race, sex or age. See Iadimarco v. Runyon, 190 F.3d 151, 163 (3d Cir. 1999) (requiring a plaintiff alleging a "reverse discrimination" claim under Title VII to show that he was treated "'less favorably than others because of [his] race, color, religion, sex, or national origin'");

4

Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 300 (3d Cir. 2004) (explaining that to state a prima facie claim of discrimination under ADEA, a plaintiff must make a showing that he was "ultimately replaced by a person sufficiently younger to permit an inference of age discrimination").

Next the Court turned to Appellant's retaliation claims. A plaintiff alleging retaliation under Title VII must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 231 (3d Cir. 2007). As this Court has explained, "[w]ith respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings . . . and those who oppose discrimination made unlawful by Title VII . . . ." Moore v. City of Philadelphia, 461 F.3d 331, 341-42 (3d Cir. 2006). In other words, in order to succeed on a Title VII retaliation claim, an employee must have an "objectively reasonable" belief that the activity he opposes constitutes unlawful discrimination under Title VII. See Wilkerson v. New Media Tech. Charter Sch., 522 F.3d 315, 322 (3d Cir. 2008).

The District Court's decision on this issue is somewhat confusing. While it held that Appellant "engaged in statutorily protected activity by filing complaints with the EEOC," it also noted that Appellant's grievances and complaints "were not aimed at opposing practices made unlawful by Title VII – i.e., discrimination on the basis of color,

5

religion, etc. Therefore, they are not protected activity for the purpose of establishing a prima facie case of retaliation." (D. Ct. Op. 5-6 & n.3.) Moving ahead to the issue of causation, the District Court concluded that this element had not been met and, accordingly, that Appellant had not made out a prima facie case of retaliation. Additionally, the Court held that even assuming the existence of such a prima facie case, Appellee had articulated a legitimate, non-retaliatory reason for Appellant's termination, and accordingly, Appellant could not withstand Appellee's motion for summary judgment.

We conclude that Appellant's history of filing grievances through his union and complaints through the EEOC do not constitute "protected activity" within the meaning of Title VII. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (per curiam) (holding that standard requires that reasonable person believe conduct complained of violated Title VII); Barber v. CSX Distribution Servs., 68 F.3d 694, 701-02 (3d Cir. 1995) (explaining that general complaint about unfair treatment is insufficient to establish "protected activity" under Title VII). In so holding, we express no opinion on the merits of these grievances and EEOC complaints. We recognize that Appellant has alleged a long history of what he perceives to be differential treatment by his supervisors. We do not discount this information; however, it is insufficient to satisfy the requirements of "protected activity" under Title VII. Because we will affirm on the ground that Appellant failed to demonstrate "protected activity" within the meaning of Title VII, we

6

need not reach the issue of whether he alleged a sufficient causal connection between the filing of his grievances and complaints and his subsequent termination.

Based on the foregoing, we will affirm the judgment of the District Court.