NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1555
_____

TONY REAVES,

Appellant

v.

PENNSYLVANIA STATE POLICE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 1-09-cv-02549)
Honorable Christopher C. Conner, District Judge
_____

Submitted under Third Circuit LAR 34.1(a)
December 12, 2014

BEFORE:  VANASKIE, GREENBERG, and COWEN, Circuit Judges

(Filed:  January 8, 2015)
_____

OPINION *
_____

GREENBERG, Circuit Judge.


I.  INTRODUCTION

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
  does not constitute binding precedent.

Plaintiff, Tony Reaves, claims that his former employer, the Pennsylvania State Police ("PSP"), dismissed him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., in retaliation for Reaves having made complaints of racial discrimination. PSP made a motion for summary judgment, which the District Court granted as it concluded that Reaves could not establish that there was a causal connection between his complaints and his subsequent dismissal. Reaves has appealed, but we agree with the Court's conclusion and therefore will affirm its order for summary judgment entered on February 6, 2014.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Reaves, who is African American, graduated from the Pennsylvania State Police Academy in April 2006, and became a probationary PSP trooper. The PSP probationary trooper program enables supervisors to make a comprehensive in-depth evaluation of a new trooper. The program includes periodic written evaluations of the probationary trooper's on-the-job conduct, as well as a general investigation (GI) report compiled near the end of the probationary period. The GI report is a review of the trooper's performance and includes a recommendation of whether PSP should retain the trooper.

When Reaves graduated from the academy, PSP assigned him to Troop J Lancaster, Avondale Station, where his immediate supervisor was Corporal Erin Magee, his station commander was Lieutenant Sheldon Sneed, and his troop commander was Captain John Laufer. Magee's notes from that period state that in May 2006, Reaves was stopped by a trooper from a different station for speeding and that in August 2006, he

2

was stopped by a trooper from yet another station for a minor traffic violation. During that period, Magee counseled Reaves that he had acted unprofessionally in relation to an incident involving radio etiquette and that he needed to improve his reputation among coworkers and the public.

In September 2006, Magee prepared Reaves's first probationary evaluation, which rated him as "satisfactory" in nine categories and "borderline – needs improvement" in six. Magee noted that Reaves, at times, had "displayed a certain arrogance or lack of respect towards co-workers" and had "not always used good tact whil[e] interacting with his co-workers and supervisors." App. 1236, 1245.

Magee prepared Reaves's second evaluation in November 2006, rating him as "satisfactory" in twelve categories and "borderline – needs improvement" in three. Magee noted improvement in Reaves's sensitivity and tact towards others but stated that he still needed to improve in this area.

Later that month, Corporal Steven Ranck replaced Magee as Reaves's immediate supervisor. Ranck prepared Reaves's third evaluation in January 2007, rating him as "satisfactory" in fourteen categories and "borderline – needs improvement" only in the category of job knowledge. Ranck opined that Reaves had made the necessary improvements with respect to his attitude and deportment towards others.

On January 23, 2007, Ranck prepared a GI report in which he recommended that PSP retain Reaves. Most of the persons interviewed for the report, including some who identified certain problems with Reaves's attitude and reports, recommended retaining Reaves. One officer, however, did not recommend retaining Reaves, describing him as

3

"so aggressive that he suffers from tunnel vision and makes poor decisions while on the road," and stating that Reaves "has also displayed poor acceptance of criticism and a lack of respect for supervisors." App. 1383.

Sneed likewise recommended retaining Reaves, but, after reviewing the GI report and Sneed's supplemental report, Laufer recommended that PSP extend his probationary period for six months. On March 14, 2007, the Probationary Trooper Review Panel ("PTRP") considered Laufer's recommendation and similarly concluded that Reaves's probation should be extended. The PTRP emphasized the problems identified regarding Reaves's attitude and reports, as well as the fact that Reaves had been stopped for traffic violations on two separate occasions.[1] On March 26, the Probationary Trooper Administrative Review Panel ("PTARP") agreed that PSP should extend Reaves's probationary period.[2] PSP notified Reaves of its decision, and Reaves's then acting station commander informed him that his attitude and demeanor toward others would be "monitored closely" during the ensuing six-month extension period. App. 622, 1224-25.

Reaves believed he was being discriminated against due to his race when PSP extended his probationary term. Accordingly, on April 12, 2007, he contacted Lieutenant Martin Henry of PSP's Equal Employment Opportunity Office, and complained of his treatment. He contacted Henry ten more times through August of that year. In looking into Reaves's complaints, Henry spoke with both Sneed and Laufer.

---

[1] All of the traffic stops that we describe in this opinion took place while Reaves was off duty, driving a private vehicle.

[2] The PTRP and PTARP consist of senior officers.

4

Meanwhile, Ranck prepared Reaves's fourth probationary evaluation on March 7, 2007, rating him as satisfactory in all categories, including attitude. Ranck prepared Reaves's fifth evaluation that May, again rating him as satisfactory in all categories.

On July 21, 2007, PSP troopers stopped Reaves again, this time for speeding and passing a state police car on the right. Given Reaves's history of traffic stops, and after consultation with Laufer, Sneed initiated a formal investigation into this incident. Sneed also directed Ranck to look into the details of Reaves's previous traffic stops and to run an offline registration search of Reaves's vehicle to determine if he had been involved in any other traffic stops.

The investigation led Reaves to complain to Ranck in August 2007 that he believed he was being treated differently than other troopers. Thereafter, Reaves also made both verbal and written complaints of discrimination to Sneed, who forwarded Reaves's complaint to Laufer.

While investigating the July 2007 traffic stop, Ranck learned of an incident from November 2006 in which Reaves allegedly acted "nasty, demanding and very arrogant" toward a sergeant. App. 104. Additionally, the offline registration search of Reaves's vehicle revealed that the license plate on Reaves's truck, which was registered to his grandfather, had been run 29 times since Reaves started at the police academy.

As required due to the extension of Reaves's probation, Ranck began preparing a second GI report. The report included information about the July 2007 traffic stop and the November 2006 incident between Reaves and the sergeant. A majority of the individuals interviewed still recommended retaining Reaves, but some now made

5

contrary recommendations. Several officers noted a decline in the quality of Reaves's reports. Magee, now a sergeant, also stated that Reaves's demeanor remained a problem. Ranck concluded that Reaves should not be retained. He expressed concern that Reaves's off-duty conduct in relation to the repeated traffic stops showed a poor attitude: "I believe that if Trooper Reaves is willing to behave poorly off duty while under the scrutiny of probation, the problems will only continue and possibly increase once his probation has ended. I feel that Trooper Reaves' off duty behavior will jeopardize the Department's image." App. 1440.

On August 17, 2007, Sneed reviewed the GI report and prepared his own report recommending that PSP not retain Reaves. Sneed stated that despite repeated discussions with Reaves regarding the need to improve his demeanor, Reaves continued to speak to people in an arrogant manner. Between August 24 and September 13, Ranck prepared three supplements to the GI report. These supplements provided further information regarding the two traffic stops during Reaves's initial probationary period, Ranck's offline registration search and follow-up investigation, and an additional traffic stop on March 12, 2007.

On September 13, Laufer reviewed Reaves's GI reports and supplements, and issued a recommendation that PSP not retain Reaves. Laufer stated that despite some improvement in areas previously identified as problematic, Reaves's attitude and his own conformance to the law remained concerns. Laufer emphasized the multiple traffic stops and the lack of respect for the PSP and Pennsylvania law that these incidents reflected, and concluded that this "pattern of conduct" while on probation indicated serious

6

behavioral and attitudinal issues. App. 1420. The area commander for Reaves's troop, the PTRP, and the PTARP each agreed with the recommendation to dismiss Reaves. The PSP commissioner signed off on this decision on October 2, and Sneed notified Reaves of his dismissal two days later.

For record-keeping purposes, Ranck prepared Reaves's sixth probationary evaluation, which Ranck signed on October 3. Ranck rated Reaves's attitude as "unsatisfactory." In discussing Reaves's attitude, Ranck wrote: "Trooper Reaves has also recently displayed a negative attitude towards the Department. He has advised me that h[e] feels that there is a double standard used regarding him and that he gets [Bureau of Professional Responsibility complaints] for his actions and others get nothing for the same thing or worse. However when asked to supply specific instances so that I could look into such things he has been unable/unwilling to provide specifics." App. 1324. Given that Ranck did not sign this evaluation until after the commissioner consented to Reaves's dismissal, the evaluation did not play a role in the decision to dismiss Reaves.

Reaves sued PSP in the District Court, asserting claims of race discrimination and retaliation, both in violation of Title VII. PSP moved for summary judgment on both causes of action. Initially, the Court, adopting in part and rejecting in part a report and recommendation from a magistrate judge, granted the motion with respect to the discrimination claim but denied it with respect to the retaliation claim. See Reaves v. Pa. State Police, No. 1:09-CV-2549, 2012 WL 4970225, at *7 (M.D. Pa. Oct. 17, 2012). In that opinion, however, the Court did not address whether Reaves could show that there was a causal connection between his complaints of differential treatment and his

7

subsequent dismissal to support a claim of retaliation. PSP moved for reconsideration based on the causation issue, and the Court granted the motion for reconsideration and granted summary judgment for PSP. See Reaves v. Pa. State Police, No. 1:09-CV-2549, 2014 WL 486741, at *1 (M.D. Pa. Feb. 6, 2014). Reaves then filed this appeal limited to his retaliation claim.

## III. STATEMENT OF JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over Reaves's Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

On an appeal from an order granting summary judgment, we exercise plenary review and apply the same standard as the district court. See Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 251 (3d Cir. 2014). To warrant summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, we view the evidence "in the light most favorable to the nonmoving party and draw all inferences in that party's favor." Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986).

IV. DISCUSSION

Title VII prohibits employers from retaliating against employees for complaining about certain unlawful employment practices, including discrimination on the basis of race. See 42 U.S.C. § 2000e-3. We consider claims of retaliation like the one at issue here, where there is not direct evidence of retaliation, using the three-step burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). See McKenna v. City of Phila., 649 F.3d 171, 178 n.7 (3d Cir. 2011); Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006). Under this framework, the plaintiff first must establish by a preponderance of the evidence a prima facie case of retaliation; the burden of production of evidence then shifts to the defendant to articulate a legitimate, non-retaliatory reason for taking the adverse action against the plaintiff; finally, the burden rebounds to the plaintiff to prove by a preponderance of the evidence that the proffered reason constitutes a pretext for retaliation. See Marra v. Phila. Hous. Auth., 497 F.3d 286, 300-01 (3d Cir. 2007); Moore, 461 F.3d at 342. But the plaintiff always has the ultimate burden of persuasion. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 2106 (2000).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in conduct protected by Title VII; (2) the employer took an adverse action against the plaintiff either after or contemporaneously with the protected activity; and (3) a causal connection exists between the protected activity and the adverse action. See Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 320 (3d Cir. 2008); Andreoli v. Gates, 482 F.3d 641, 649 (3d Cir. 2007). The District Court held, and the

9

parties do not dispute, that Reaves satisfied the first two elements of his prima facie case based on his complaints of differential treatment to Henry, Ranck, and Sneed, and his subsequent dismissal from PSP. The District Court concluded, however, that Reaves could not establish that there was a causal connection between his complaints and his dismissal. We agree with this conclusion.

Title VII retaliation claims require proof that the plaintiff's participation in a protected activity constituted a but-for cause of the employer's adverse action. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2533 (2013); LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 n.8 (3d Cir. 2007); Woodson v. Scott Paper Co., 109 F.3d 913, 935 (3d Cir. 1997). We consider "a broad array of evidence" in determining whether the plaintiff can show the requisite causal link. LeBoon, 503 F.3d at 232 (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000)). Such evidence may include a temporal proximity between the protected activity and the adverse action, antagonistic behavior on the part of the employer, inconsistencies in the employer's articulated reasons for taking the adverse action, or any other evidence that supports an inference of retaliatory animus. See id. at 232-33; Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 288-89 (3d Cir. 2001); Farrell, 206 F.3d at 280-81.

However, "[a]n employee cannot easily establish a causal connection between his protected activity and the alleged retaliation when he has received significant negative evaluations before engaging in the protected activity." Ross v. Gilhuly, 755 F.3d 185, 194 (3d Cir. 2014). In Ross, we held that an employee could not establish a causal link between his protected activity and his ultimate termination, where the reasons that the

10

employer contemporaneously gave for the termination were deficiencies that it had identified in performance evaluations even prior to the employee's protected activity. See id.; see also LeBoon, 503 F.3d at 233-34 (affirming summary judgment because employee could not show prima facie causation based on tense relationship with her supervisor where this tense relationship predated employee's protected activity); Shaner v. Synthes, 204 F.3d 494, 504-05 (3d Cir. 2000) (holding that negative performance evaluation after employee's protected activity did not support causal link so as to survive a summary judgment motion where earlier evaluations contained similar criticisms).

Here, the reasons PSP gave for dismissing Reaves matched its reasons for extending his probation prior to his complaints of discrimination. In both instances, PSP emphasized problems with Reaves's attitude, reports, and off-duty conduct, including his traffic stops. Reaves points to certain of his supervisors' evaluations as evidence that he had resolved his attitudinal issues before his dismissal, but most of the evidence he cites predated his probation extension and therefore does not support an inference that Reaves had remedied the problems that led to the extension of his probation. Similarly, although Ranck rated Reaves as having a "satisfactory" attitude in his first two probation evaluations after Laufer first recommended the probation extension, these evaluations do not establish that there was improvement on Reaves's part as Ranck gave him the same rating in his last evaluation before Laufer's recommendation. See Fuentes v. Perskie, 32 F.3d 759, 767 (3d Cir. 1994) (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 533 (3d Cir. 1992)) (noting that relevant decisionmakers often disagree about an employee's qualifications and that such disagreement does not evidence

11

discriminatory intent). Furthermore, these evaluations preceded Reaves's July 2007 traffic stop, after which Ranck learned of the more extensive problems with Reaves's attitude and off-duty conduct.

Reaves contends that the increased scrutiny and investigation that uncovered these more extensive problems resulted from retaliatory animus, but he does not present adequate evidence to support this claim. As Reaves acknowledges, PSP informed him at the time it extended his probation that he would be "monitored closely" during the ensuing period. Appellant's br. 15. PSP initiated its investigation into Reaves's off-duty conduct only after learning of his involvement in a third off-duty traffic stop during his probationary period. Reaves provides no evidence that such an investigation was unusual for a trooper who continued to have problems with off-duty conduct after PSP extended his probation in part because of such conduct. The only evidence of retaliatory animus that Reaves identifies is that in his last probationary evaluation, Ranck cited Reaves's complaints of differential treatment as one of the examples of his unsatisfactory attitude. However, this isolated comment, signed after PSP already had finalized its decision to dismiss Reaves, does not by itself constitute sufficient evidence of a retaliatory motive for Reaves to survive the motion for summary judgment. See Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 799 (3d Cir. 2010) (affirming summary judgment for employer and declaring that commander's comment, after twice transferring plaintiff, that he was "pissed" at plaintiff for making certain statements did not provide adequate "foundation on which a reasonable factfinder could predicate a finding that the transfers were in retaliation for" plaintiff's earlier complaints); Woodson, 109 F.3d at 921-22

12

(noting that suggestion by employer's director of human resources that plaintiff drop his equal employment opportunity suits would not alone suffice to establish prima facie causal link); Ezold, 983 F.2d at 545 ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight . . . .").

## V. CONCLUSION

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of PSP entered on February 6, 2014.