NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 18-2933

CLIVE BARON,

Appellant
v.

ABBOTT LABORATORIES

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-16-cv-02736)
District Judge: Honorable Jan E. DuBois

Submitted Under Third Circuit L.A.R. 34.1(a)
April 15, 2019

Before: AMBRO, GREENAWAY, JR., and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: May 9, 2019)

OPINION[*]

AMBRO, <u>Circuit Judge</u>

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

This appeal concerns whether STARLIMS, a subsidiary of Abbott Laboratories, retaliated against Clive Baron by not rehiring him after he sued them for age discrimination. Because Baron can show no fact that, construed in his favor, establishes a causal relationship between his age discrimination suit and Abbott's failure to rehire him, we affirm the District Court's granting of Abbott's motion for summary judgment.

## I.    Background

Baron worked for STARLIMS for over fifteen years, most recently as the company's General Manager to four geographic regions from March 2012 until December 2013. During this time as GM, he reported directly to STARLIMS Divisional VP David Champagne and was, by all accounts, a strong employee. In December 2013, STARLIMS restructured its leadership after the company missed its revenue goals by 15%. It removed Baron's position and promoted each employee who had supervised a region under him to GM of that region, reporting directly to Champagne. After being terminated, Baron filed an age discrimination suit ("*Baron I*") against Abbott, which he eventually lost.

While his suit in *Baron I* was ongoing, Abbott and STARLIMS decided it needed to recreate Baron's old position, and so Champagne hired Richard Lanchantin for the post in February 2015. The next two years brought significant changes to STARLIMS' leadership. Champagne stepped down in May and was replaced first by Jay Srinivasan, and then ultimately by Mark Spencer. Following Spencer's promotion, Lanchantin resigned in early 2016. Spencer hired Pedro Malha to replace Lanchantin in April 2016, but he resigned in June and was replaced by Steve Klis in November 2016. When hiring

2

Malha and Klis, Abbott only advertised the vacancies internally and so Baron neither heard of nor applied for these positions. Spencer hired both Malha and Klis after Dolores Sanan, a Human Resources Director at Abbott, presented each as the only candidate for his review.

After learning that Abbott had recreated his old position, Baron filed suit in the Eastern District of Pennsylvania alleging that Abbott retaliated against him by not rehiring him. After the parties conducted discovery, Abbott filed a motion for summary judgment, which the District Court granted. Baron now appeals.

## II.    Standard of Review

We review the District Court's grant of summary judgment *de novo*. *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 256 (3d Cir. 2017). Thus, we will affirm if, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law . . . . view[ing] the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Davenport v. Borough of Homestead*, 870 F.3d 273, 278 (3d Cir. 2017) (internal quotation marks and citations omitted).

Baron raises retaliation claims under the Age Discrimination in Employment Act, the Florida Civil Rights Act of 1992, and the Pennsylvania Human Rights Act. Each is governed by the *McDonnell Douglas* burden-shifting framework. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 192–93 (3d Cir. 2015); *Zaben v. Air Prod. & Chemicals, Inc.*, 129 F.3d 1453, 1455 & n.2 (11th Cir. 1997). Under that framework, Baron must first establish a *prima facie* case of retaliation. *Daniels v*, 776 F.3d at 193.

3

This requires him to show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Id.* If he can establish a *prima facie* case of retaliation, the employer must provide a legitimate non-retaliatory reason for its conduct, which Baron can then rebut if he shows the reason is merely pretext. *Id.*

### III.     Discussion

The parties do not dispute, as the District Court concluded, that the first two prongs of the *prima facie* case are satisfied. Protected actions "include[] . . . an employee's filing of formal charges of discrimination against an employer." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015). And not being rehired can constitute an adverse employment action. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 320 (3d Cir. 2008). The District Court ruled that Baron failed to show that his prior suit caused his not being rehired.[1] Baron argues that this was an error and that a retaliatory motive was present in each of Abbott's hiring decisions for his old GM position.

---

[1] In the alternative, the Court ruled that Baron could not establish pretext because he could not show that the legitimate reason for not hiring him—that he did not apply—was pretext to a retaliatory motive. Because we agree on causation, we need not reach pretext. As a practical matter, however, the two inquiries could run together. Showing that Abbott deliberately concealed the positions from Baron could support both a causal relationship between *Baron I* and Baron's non-hiring and that Abbott's legitimate reason for not hiring him was pretext.

4

### a. Lanchantin's hiring in February 2015

Baron asserts that Abbott retaliated when it hired Lanchantin instead of him to fill his old position. He contends that Abbott deliberately concealed the position from him during his suit by not disclosing it in an interrogatory. It asked Abbott to identify "each person employed at STARLIMS at grade 20 or above since January 1, 2013, . . . [their] duties[,] . . . responsibilities[,] . . . qualifications[,] . . . [and] the dates each individual held each such position." App. at 340. It also asked Abbott to "describe in complete detail the process by which the decision was made to employ each person in each such position, [and] identify all individuals involved in the decision to employ each person . . . ." *Id.* Abbott only provided responses for employees who held positions between December 1, 2013, and February 7, 2014. *Id.* at 341. Baron argues that, in so responding, the company deliberately concealed Lanchantin's hiring in February 2015. This evidence is insufficient to infer retaliation. Even if Abbott disclosed Lanchantin's position, Baron would not have been able to apply for it because it was already filled at the time of the disclosure. Baron thus fails to show a causal link between his prior suit and the company's hiring of Lanchantin.

### b. Malha's hiring in April 2016 and Klis's in November 2016

Baron also claims that Abbott considered *Baron I* in its decision not to hire him as Lanchantin's replacement. Baron did not apply for the position because, he contends, Abbott deliberately advertised the position internally so as to conceal it from him. He points to Sanan, who knew of his age discrimination suit, as the person who directed Abbott to advertise internally.

5

But the record does not support this contention. Sanon stated in a deposition that she did not have "any involvement in the decisions on whether or not to post an open position on Abbott's job posting system at STARLIMS." App. 357. Baron believes that Spencer's deposition contradicts her statement:

> Q:           Did you have any support from human resources in connection with recruiting and hiring a replacement for Mr. Lanchantin in early 2016 or the Spring of 2016?
> [Spencer]:    Yes.
> Q:           From whom did you receive that support?
> [Spencer]:    D[o]lores.
> Q:           And can you describe all of the ways in which D[o]lores supported you in connection with the recruitment and hiring of a replacement for Lanchantin?
> [Spencer]:    Very little.
> Q:           Well, you mentioned that there were things like posting the position, determining salary grade, doing other kinds of paperwork associated with that. Was that correct?
> [Spencer]:    Yes.
> Q:           Who did all of that kind of leg work in connection with the recruitment and hiring of a replacement for Lanchantin in the global director position?
> [Spencer]:    D[o]lores.

*Id.* at 291. But even construed in Baron's favor, there is no contradiction here. Spencer states that Sanan "post[ed] the position," not that she had a role in determining whether the position should be public or private. Baron also points to no facts showing that the decision to advertise internally departed from STARLIMS' standard practices or what considerations affected whether the company advertised internally or externally. In short, he offers no facts suggesting *Baron I* influenced in any way the company's decisions to recruit or hire for the GM position.

### c. Abbott's hiring of other positions

Baron also challenges his not being hired for any of the region-specific GM positions that were created in the initial restructure that caused his termination. Abbott first promoted Simon Wood as the GM to Europe and Tamir Gottfried as the GM to the Americas. Baron argues that he should have been considered too or hired when they were replaced in 2016 and 2017, respectively. But as with the positions above, Abbott only advertised internally and Baron cannot show facts that this was caused by his suit in *Baron I*. His arguments fail for the same reasons discussed above.

Thus we affirm.